NATIONAL CITY BANK OF CLEVELAND, TRUSTEE, *v.* JUDKINS ET AL.

[Cite as National City Bank of Cleveland, Trustee, v. Judkins, 8 Ohio Misc. 119.]

(No. 36871—Decided November 5, 1964.)*

Common Pleas Court of Tuscarawas County.

*Messrs. Fitzpatrick & Zimmerman*, for plaintiff.
*Messrs. Payne & Payne*, for the defendants, Vance T. Judkins, Calliope Jean Judkins and Elva Judkins.
*Messrs. Syler & Redinger*, for the defendant, Nathaniel V. Judkins.

LAMNECK, J. On March 31, 1950, N. W. Judkins, a citizen of New Philadelphia, Ohio, died testate, leaving Vance T. Judkins, a natural born son and U. S. Citizen as his only next of kin.

By a decree of the Court of First Instance of Athens, Greece, dated January 10, 1962, the said Vance T. Judkins, then single and now 54 years of age, allegedly adopted as his child one Calliope Pouvoutsis, now known as Calliope Jean Judkins,

---

*Affirmed by the Court of Appeals February 17, 1966. Motion to certify overruled by the Supreme Court June 1, 1966.

then aged eleven years. The said Vance T. Judkins married Elva Judkins on April 13, 1963, in New Philadelphia, Ohio.

The defendant, Nathaniel V. Judkins, born February 14, 1943, the issue of a former marriage, is the only natural born child of the said Vance T. Judkins at this time.

The will and codicil thereto of said N. W. Judkins was admitted to probate by the Probate Court of Tuscarawas County, Ohio, and on May 11, 1950, the National City Bank of Cleveland, Ohio, was appointed Testamentary Trustee thereunder. The will is dated January 5, 1950, and the codicil March 14, 1950.

Paragraphs 2 and 3 of Item VIII of the decedent's will read as follows (emphasis added):

"2. The trustee shall add all of the net income derived from the trust estate to the principal thereof and from such principal shall pay to or for the benefit of the then living issue of my son, Vance T. Judkins, now in being or hereafter born either before or after my death, such amounts as may be necessary or advisable to provide for the care, support and education of such issue, taking into consideration such one's other income and means of support. At the present time my son has one child, Nathaniel V. Judkins, born February 14, 1943.

"3. Upon the eldest of the then living children of my son, Vance T. Judkins, attaining the age of twenty-one (21) years, or upon the death of the survivor of the children of my said son prior to any child of his attaining the age of twenty-one (21) years, the trustee shall divide the then trust estate into such number of equal shares as there are then living children of my said son, the issue of any deceased child of my said son being entitled collectively to the share of their parent, and shall hold and distribute such shares for the benefit of such ones as hereinafter provided."

Paragraphs 4 and 6 of Item IX of the decedent's will read as follows (emphasis added):

"4. So long as my son, Vance T. Judkins, shall live, the trustee shall pay to him, or for his benefit, so much of the income or principal of the trust estate as it shall deem necessary or advisable to provide liberally for his care, support and comfort, taking into consideration his other income and means of support. The trustee shall add any of the net income of the trust estate not so paid to or for the benefit of my said son to

the principal of the trust estate at the end of each calendar year.

"6. Except as provided in paragraph 5 hereof, upon the death of the last one to die of my said son and myself, the trust estate shall be transferred, conveyed and distributed to the then living issue of Vance T. Judkins, per stirpes, subject, however, to the trust hereinafter set forth with respect to the shares of any issue of the said Vance T. Judkins, who shall be under the age of thirty (30) years at the time for distribution."

The plaintiff-trustee in this action petitions the court to construe said last will and testament and to answer certain questions in respect thereto in the following particulars:

(1) For purposes of paragraph 3 of Item VIII, is Calliope Jean Judkins, formerly Calliope Pouvoutsis, a "child" of Vance T. Judkins and entitled to have a separate trust share held thereunder for her primary benefit?

(2) Does the language in paragraph 2 of Item VIII ("* * * issue of my son * * * now in being or hereafter *born* either before or after my death * * *") indicate that the testator intended only a natural born, as opposed to an adopted, child to share in the division of the trust in paragraph 3 of Item VIII and in paragraph 6 of Item IX?

(3) For purposes of paragraph 6 of Item IX, will Calliope Jean Judkins, formerly Calliope Pouvoutsis, be an "issue" of Vance T. Judkins upon his death and entitled to have a separate trust share held thereunder for her primary benefit?

(4) Even if an adopted person were declared to be a "child" or "issue" of Vance T. Judkins for purposes of paragraph 3 of Item VIII and/or paragraph 6 of Item IX, is an adoption under the procedural laws of Greece recognizable under, and not repugnant to, the public policy and laws of the state of Ohio for purposes of determining status and its incidents under Ohio wills?

(5) For purposes of paragraph 4 of Item IX, is the care, support, and education of anyone whom Vance T. Judkins is legally obligated to support (e. g., his wife and "adopted" child) within the discretionary standards of "liberally for his (Vance's) care, support and comfort" for which the trustee has discretion to make payments.

(6) For all purposes of the decedent's will, will the lineal

descendants, if any, of Calliope Jean Judkins, by or through birth or adoption, be also the "issue" of Vance T. Judkins and/or the "heirs at law" of the testator?

To enable the court to make a declaration regarding the questions presented, three basic issues must first be determined. These may be stated briefly as follows:

1. What does the language "as it (trustee) shall deem necessary or advisable to provide liberally for his (Vance T. Judkins, testator's son) care, support and comfort, taking into consideration his other income and means of support," contained in paragraph 4 of Item IX of the testator's will, include?

2. Should the alleged adoption of Calliope Pouvoutsis, now known as Calliope Jean Judkins, by Vance T. Judkins in Athens, Greece, on January 10, 1962, be recognized by the courts of the state of Ohio, as it may affect the construction of a will, a testamentary trust or a living trust?

3. Is the said Calliope Pouvoutsis now known as Calliope Jean Judkins, to be considered "issue" of Vance T. Judkins as said term is used in paragraph 2 of Item VIII and paragraph 6 of Item IX of the testator's will, and shall she be considered as one of the "children" of Vance T. Judkins as said word "children" is used in paragraph 3 of Item VIII of said will?

What must the trustee consider in determining what part of the income or principal is "necessary or advisable to provide liberally for his (Vance T. Judkins, testator's son) care, support and comfort, taking into consideration his other income and means of support?"

Liberal care, support and comfort are not words of art, but have a relative meaning and depend upon the testator's intention and the surrounding circumstances. It is quite obvious that they are not here used in a restricted sense, nor are they to be measured by any fixed standards. The terms of the trust give to the trustee the power to pay over to the son such sums as the trustee deems necessary or advisable for his liberal care, support and comfort. This is a matter to be determined within the sound discretion of the trustee, and its determination must stand in the absence of a clear abuse of such discretion. In making such determination the trustee may include every expenditure necessary or incidental to the liberal maintenance, support and comfort of the son and all of the bona fide mem-

bers of his household, consistent with his former and present situation in life.

In *Cromwell* v. *Converse*, 108 Conn. 412, 143 A. 416, 61 A. L. R. 663, a will provided that the executors and trustees shall pay "so much of such income and only so much thereof as my said executors and trustees in their absolute discretion may think necessary and desirable for the proper maintenance and support of my son."

The court construed this provision to include all expenses necessary or incidental for the maintenance of the son and his family in luxury accompanying one in his station in life.

This court is in accord with this view. In the instant case, the trustee in making an allowance for the liberal care, support and comfort of the son, in its discretion, may include an allowance for all of the bona fide members of the son's household, including his wife, natural born children, adopted children and foster children.

In the instant case, the aforesaid Vance T. Judkins, a legal resident of New Philadelphia, Ohio, and a natural born citizen of the United States, made a trip to St. Xylokastron, Greece, with a friend where he remained from May 1957 to October 1957 and then returned to the United States.

During that period he became acquainted with Calliope Jean Pouvoutsis, a minor then of the age of six years, and the members of her family. He expressed a desire to temporarily adopt said child and even went so far as to pay the expense of a private tutor to teach her English and also made other contributions for her expenses.

After he returned to the United States he continued to pay the expenses of a private tutor to teach her English and sent her gifts of money and other presents from time to time.

He made a second trip to St. Xylokastron, Greece, in May 1959 and remained there until late October 1959. Most of this period he resided in the home of the parents of said child and even went so far as to make substantial donations for the expense of building them a new home. He also paid part of the family's living expenses.

He returned to the United States and remained here until April 1961. He then made another trip to St. Xylokastron, Greece, and lived in the home of the parents of said child until

August 1962. During this period he continued to pay the expenses of the tutor to teach said child English, lived in the home of her parents and contributed to the family's living expenses. On December 8, 1961, he filed a petition in the Court of First Instance of Athens, Greece, to adopt said child with the consent of her parents. It seems that a preliminary hearing was held December 14, 1961. A final decree of adoption was entered January 10, 1962.

He came back to the United States in August 1962 without the child and remained here until May 1, 1963. Subsequent to his present marriage in New Philadelphia on April 13, 1963, he then returned to St. Xylokastron, Greece, without his wife and made his home with the parents of the child. His wife came to St. Xylokastron, Greece, in December 1963.

Mr. and Mrs. Judkins and the child left Greece for the United States in January 1964 and have since resided together as a family in New Philadelphia, Ohio.

Nathaniel V. Judkins, the natural born son of the said Vance T. Judkins, and also a beneficiary of the Testamentary Trust established by the testator, contends that the alleged adoption of Calliope Jean Judkins by Vance T. Judkins under an order of the Court of First Instance of Athens, Greece, on January 10, 1962, is void.

Said contention is based on two grounds, viz:

1. That the Court of First Instance of Athens, Greece lacked jurisdiction to authorize said adoption, and

2. The said adoption is repugnant to the laws of the state of Ohio.

A decree of adoption is subject to collateral attack if the court which rendered it had no jurisdiction to enter it. See 2 American Jurisprudence 2d 915, Section 68.

The contention that the Court of First Instance of Athens, Greece, had no jurisdiction to grant a decree of adoption in the instant case is based on Article 1568 of Chapter 13 of the Greek Civil Code wherein it is provided that "whoever has no issue of his body, may if he has completed his fiftieth (50th) year, and is qualified to enter into a legal separation, adopt a person as his child."

At the time of the alleged adoption the said Vance T. Judkins was over fifty years of age, but had issue of his body.

The aforesaid Article 1568 of the Greek Civil Code means that such impediment concerns only Greek citizens and therefore a foreigner to Greece could adopt a Greek child if the law of his state does not recognize such an impediment. There is no such restriction in the Ohio Adoption Laws. In the alleged decree of adoption in question in this case, the Court of First Instance of Athens, Greece, took cognizance of this restriction and waived it. This court therefore finds that the Court of First Instance of Athens, Greece, had jurisdiction to grant the alleged decree of adoption.

Was the said decree of adoption repugnant to the laws of the state of Ohio?

Section 3107.01 and subsequent sections of the Revised Code, in effect at the time of the decree of adoption in Greece in the instant case, are very strict. They include the following salient features:

1. The primary consideration is the welfare and best interest of the child. Section 3107.09, Revised Code, provides in part that no adoption shall be entered unless the best interest of the child will be promoted thereby.

2. They provide for an interlocutory decree and a final decree.

3. Except under special circumstances which do not apply in this case, no child can be finally adopted until it has resided in the home of the petitioner continuously for six months.

4. They permit the adoption of a child by a single person.

5. Except under special circumstances consent to the adoption must be given by the living parents of the child.

6. The court must appoint a next friend of the child to make an investigation who is required to make a thorough investigation into the suitability of the adoption, which must include among other matters the reasons for the child's placement away from its parents, their attitude toward the proposed adoption and the circumstances under which the child came into the home of the petitioner.

The weight of authority in this country is that a child adopted in a foreign state or country may take under local statutes of descent and distribution, if such foreign state or country had jurisdiction to fix his status with respect to his adoptive parents, but this rule of international comity is subject to the

condition that the law, with regard to adoption, of the state in which the real and personal property is situated, does not differ essentially from the law of the state in which the adoption was had, so that local public policy is not violated by recognizing and giving effect to the adoption proceedings of the foreign state or country. See *In Re Finkenzeller's Estate,* 105 N. J. Eq. 44, 146 A. 656, 107 N. J. 180, 151 A. 905.

The American Law Institute has stated the rule as to foreign state adoptions as follows:

"The status of adoption created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law." See American Law Institute's Restatement of the Law of Conflict of Laws, Section 143.

Under international law or comity, the same rule would apply to a child adopted in a foreign country. See *In Re Gillie's Estate,* 8 N. J. 88, 83 A. 2d 889; 2 American Jurisprudence 2d Section 116, page 959.

In *Doulgeris* v. *Bambacus,* 203 Va. 670, 127 S. E. 2d 145, it is stated that under comity between nations, adoption decrees of a foreign country will be recognized and given effect, if the foreign court had jurisdiction to fix the status of the child with respect to adoptive parents.

All of the foregoing is subject to the condition that the decree of adoption of a foreign state or country is not repugnant to the laws of the state where the decree is under attack. The burden of proving repugnancy is upon the person attacking the decree of adoption. *Long* v. *Hess,* 154 Ill. 482; *In Re Gillie's Estate,* 8 N. J. 88, 83 A. 2d 889.

It is undisputed in this case that the child did not live in the home of the said Vance T. Judkins for a period of six months continuously prior to the alleged decree of adoption. In fact she did not live in the home of said Vance T. Judkins at any time prior to the alleged decree of adoption. The requirement relating to residence is mandatory in Ohio to determine whether the proposed adoption will promote the welfare of the child, especially as it relates to the suitability of the adoption. In this particular, the decree of adoption of the Court of First Instance of Athens, Greece, is not consistent with the laws of the state of Ohio.

This court is of the opinion that this inconsistency cannot be asserted by a presumptive heir of the adoptive parents as a repugnancy to the laws of the state of Ohio so as to vacate the adoption, and should be considered, if questionable, as to them as a mere irregularity. Where an adoptive parent has obtained a decree of adoption, and taken the adopted child into his own home, his presumptive heirs, personal representatives, as well as himself, are estopped thereafter from asserting the adoption was invalid due to an irregularity in the adoption proceedings, which is not jurisdictional. See 2 American Jurisprudence 2d Page 921, Section 74; 16 A. L. R. 2d 1020.

What effect shall the adoption in controversy in this case be given in the state of Ohio?

In *Barrett* v. *Delmore,* 143 Ohio St. 203, it was held that the status of adoption, created by a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law. See also 2 American Jurisprudence 2d Page 369, Section 12.

In this connection it should be noted that Article 1581 of Chapter 13 of the Greek Civil Code provides that "as to other matters, no relationship exists between the relatives of the adoptive parent and the adoptive child and vice versa."

At the time the testator executed his will and the codicil in 1950 Section 10512-23, General Code, relating to adoption in the state of Ohio effective in 1944 in so far as it relates to this case provided that "an adopted child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents."

When the testator executed his will in 1950, it must be presumed that the testator knew of this provision of the adoption statutes, and his will must therefore be construed in connection with the adoption statutes. See *Everhard* v. *Brown,* 75 Ohio App. 451; *Trust Co.* v. *Davidson,* 157 Ohio St. 355.

Section 3107.13, Revised Code, effective October 1, 1953, now provides that:

"For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents" * * * "For the purpose of inheritance to, through, and from a legally adopted child, such child shall be treated the same as if he were the natural child of the adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession."

In *Trust Co.* v. *Davidson,* 157 Ohio St. 355, the fourth proposition of the syllabus reads as follows:

"Although it is presumed that every testator knew the adoption statutes of the state as they were at the time of making his will, and, where pertinent, the provisions of such statutes must be taken into consideration in the interpretation of the will, where the testator himself was a stranger to any adoption proceedings and made direct provision for relatives so that they take under his will neither from nor through any adopting parents, all the provisions of the will must be considered in interpreting it and not simply the provisions of the adoption statutes."

The determination of the right of an adopted child to succeed to interests in property which by the terms of a will, living trust or other instrument are limited to a "child," "children," "issue," "grandchildren," "heirs," "legal heirs," or "heirs of the body," etc. of the person or class of persons named in such instrument depends upon many diverse factors. These include (1) the content and phraseology of the instrument, (2) the provisions of the adoption statutes in effect at the time of the adoption as an aid to the construction of the instrument, (3) the time when the instrument was executed in relation to the time of the adoption, and (4) whether the settlor or testator was himself the adopting parent, or whether the issue involved an adopted child of persons other than the testator or settlor. See 2 American Jurisprudence 2d, Page 933, Section 92.

In other jurisdictions it is generally held that a child

adopted by persons other than the person executing the will, trust instrument or other instrument after its execution is not included in terms of the instrument limited to a "child," "children," "issue," "grandchildren," "heirs," "legal heirs," or "heirs of the body," etc. unless a contrary intention appears from the instrument itself and the surrounding circumstances. See 2 American Jurisprudence 2d Page 938, Sections 98 and 99; *Trust Co.* v. *Davidson,* 157 Ohio St. 355.

It would therefore follow that the terms "issue," "child," etc. appearing in a will, trust or other instrument include an adopted child when such term is used by the adopting parent, but exclude an adopted child from the class included within the term "issue," "child," etc. when used in such an instrument by an ancestor of the adopting parent, if the adoption took place subsequent to the death of such ancestor, unless a contrary intention appears from the instrument itself and the surrounding circumstances. See *Rodgers* v. *Miller,* 43 Ohio App. 198, 133 A. L. R. 597, 166 A. L. R. 150, 86 A. L.R. 2d page 30.

In the testamentary trust asked to be construed in this case, the testator throughout item VIII of his will uses the words "issue," "child," and "children" interchangeably. In paragraph I of said item it is provided "If I am survived by my son, Vance T. Judkins, and any issue of his," and further on in said paragraph it is provided "or if I am survived by issue of my said son." In paragraph 2 of Item VIII he again uses the word "issue" on two occasions and uses the term "child" on another occasion. In paragraph 3 of the same item "child or children" is used.

In paragraph 3 of Item X of his will the word "issue" is used to designate the class of persons who are to take upon the death of the testator's son. In paragraph 2 of Item VIII of the testator's will, the term "hereafter born" is used as follows: "For the benefit of the then living issue of my son, * * * now in being or hereafter born, either before or after my death."

When the testator executed his will, the child had not been adopted by Vance T. Judkins so he had no knowledge of her existence. The adoption occurred subsequent to his death. The way he used the words "child," "issue," "children," and "hereinafter born" in said instrument it is quite apparent that

he intended to include only natural born children of Vance T. Judkins in such terms.

*Judgment accordingly.*

Note: The Court of Appeals stated in its entry that the finding of the trial court regarding the lineal descendants of Calliope Jean Judkins was premature. This statement does not affect this opinion.