CONKLE ET AL., EXRS., APPELLEES, *v.* CONKLE ET AL., APPELLANTS.

[Cite as Conkle v. Conkle (1972), 31 Ohio App. 2d 44.]

(No. 382—Decided March 10, 1972.)

*Mr. Russell E. Lyons,* for plaintiffs-appellees.

*Messrs. Barry & Blanchard,* for Maynard Conkle, defendant-appellant.

*Messrs. Freeman, Leech & Freeman,* for Randall and Carol Conkle, defendants-appellees.

PUTMAN, J. This case calls for a determination of whether two children adopted by a testator's children are to be included in a post-1951 testamentary class gift to his "living grandchildren."

One adoption took place, to testator's knowledge, more than two years prior to his re-publication of his will—by codicil. This adoption is thus removed from the "stranger to the adoption" rule which was derived from cases all of which involved adoptions subsequent to the execution of the will. Moreover, the other language of the will, coupled with the "surrounding circumstances," referred to in appellant's statement of the rule, would, as to both adopted children, completely rebut the presumption raised by the rule.

The statement of the rule as set forth in appellant's brief is as follows:

"A child adopted by persons other than the person executing the will, trust or other instrument *after its execution* is not included in terms of the instrument limited to a 'child', 'children', 'issue', 'grandchildren', 'heirs', 'legal heirs', etc. unless a contrary intention appears from the instrument itself and the surrounding circumstances. See 2 Am. Jur. 2d 938, Sections 98 and 99; *Third National Bank & Trust Co.* v. *Davidson*, 157 O. S. 355, 47 O. O. 257, 105 N. E. 2d 573.

"It would therefore follow that the terms 'issue', 'child', etc. appearing in a will include an adopted child when such term is used by the adopting parent, but excludes an adopted child from the class when used in such an instrument by an ancestor of the adopting parent *if the adoption took place subsequent to the death of the ancestor,* unless a contrary intention appears from the instrument itself *and the surrounding circumstances.* See *Rodgers* v. *Miller,* 43 O. A. 198, 182 N. E. 654, 133 A. L. R. 597, 166 A. L. R. 150, 86 A. L. R. 2d 30.'' (Emphasis added.)

Of overriding consequence in this case is the mass of clear and convincing evidence that, to this particular testator, his "grandchildren" included Randall and Carol Conkle, the adopted children of his son.

Finally, we hold that the legislature has abrogated the so-called "stranger to the adoption" rule by the enactment, effective October 1, 1953, of R. C. 3107.13.

In summary, we hold the presumptive rule to be: (1) Inapplicable to this case; (2) Rebutted by the terms of the will in light of the facts, if applicable; and (3) Abrogated by R. C. 3107.13.

I.

We turn now to a detailed examination of the case.

All parties agree that the codicil, executed June 27, 1958, to the last will of the testator, dealt only with and added newly acquired real estate to his testamentary disposition and had no bearing upon the issues involved

here other than to ratify, confirm and republish his last will of May 28, 1955 in all other respects. The balance of the agreed statement of the case is as follows.

Cleophas Conkle, died testate on August 30, 1964 and on September 8, 1964, his last will and testament, dated May 28, 1955, with a codicil dated June 27, 1958, attached, was admitted to probate in the Probate Court of Coschocton County, Ohio. Item 2 of testator's will provided, in pertinent part, the following:

"Upon the death of any of my said three children, that portion of income from my real estate, as to which such deceased child is hereunder entitled to the use and income, shall be used for the benefit of and income therefrom collected for the benefit of the children of such deceased child, so long as any of my three children shall live. If such deceased child shall leave no children surviving then the income from such deceased child's share of land shall be distributed equally among my living grandchildren.

"The trust herein created shall continue so long as any of my three children shall live. Upon the death of the last survivor of said three children, said trust shall terminate; and all of said real estate shall be sold by the Executors of my Will, and the net proceeds thereof after payment of the expenses of sale shall be distributed equally among my then living grandchildren."

The testator died August 30, 1964 and left surviving him three children, Maynard Conkle, Evelyn Garig and John Conkle, but on October 8, 1965, Evelyn Garig died testate without ever having had any children. Maynard Conkle had at the testator's death, and presently has, five children, Glendon C. Conkle, Galen E. Conkle, Gerald D. Conkle, Evelyn Ann Conkle and Beverly Conkle. John Conkle had at testator's death, and presently has, two children, Randall Conkle and Carol Conkle, both of whom are legally adopted children.

The death of Evelyn Garig raised the question of identity of the "living grandchildren" of Cleophas Conkle who are entitled presently to receive her share of the trust

estate income, and the further question of who will ultimately be the members of the class of testator's "then living grandchildren" at the death in the future of the last survivor of his three children. On November 23, 1965, Maynard Conkle and John Conkle, as executors of the last will and trustees of the testamentary trust created by the last will of Cleophas Conkle filed a petition for declaratory judgment against the defendants, Maynard Conkle, et al., they being all of the interested parties, praying the court to determine and resolve these questions.

After a consideration of the arguments and briefs submitted by counsel, the court ordered that upon final hearing the interested parties be permitted to introduce parol and extrinsic evidence, including declarations made by the testator, to aid the court in determining the testator's intent as to whom he intended to be included within the class of his "living grandchildren" and his "then living grandchildren." We find no error in this.

Upon a final hearing, the court held that the testator, Cleophas Conkle, by his last will and testament intended the following:

"1. That the defendants, Randall Conkle and Carol Conkle, the adopted children of John Conkle, be included in the class of 'my living grandchildren', as used and set forth in the last sentence of the third paragraph of Item 2: on Page 2 of the decedent's last will and testament, the said Randall Conkle and Carol Conkle having the same rights therein as those of the defendants, Glendon C. Conkle, Galen E. Conkle, Gerald D. Conkle, Evelyn Ann Conkle and Beverly Conkle, the natural children of Maynard Conkle.

"2. That the defendants, Randall Conkle and Carol Conkle, the adopted children of John Conkle, be included in the class of 'My then living grandchildren' as used and set forth in the last sentence of the fourth and last paragraphs of Item 2: on Page 2 of decedent's last will and testament, the said Randall Conkle and Carol Conkle having the same rights therein as those of the defendants, Glendon C. Conkle, Galen E. Conkle, Gerald D. Conkle,

Evelyn Ann Conkle and Beverly Conkle, the natural children of Maynard Conkle.

"3. That the term 'grandchildren' includes any afterborn natural children of Maynard Conkle and John Conkle, but does not include any children adopted by either Maynard Conkle or John Conkle after August 30, 1964, the date of testator's death.

"WHEREFORE, it is ordered, adjudged and decreed that the defendants, Randall Conkle and Carol Conkle, shall in any and all respects be deemed to be within the class of and treated as two of my 'living grandchildren' and 'my then living grandchildren' as used and set forth in Item 2: of the decedent's last will and testament, the said Randall Conkle and Carol Conkle having the same rights therein as those of the defendants, Glendon C. Conkle, Galen E. Conkle, Gerald D. Conkle, Evelyn Ann Conkle and Beverly Conkle. It is further ordered, adjudged and decreed that the defendants, Randall Conkle and Carol Conkle, shall in any and all respects be deemed to be and treated as the grandchildren of the decedent, Cleophas Conkle, and that further the term of 'grandchildren', shall be deemed to include any afterborn natural children of Maynard Conkle and John Conkle, but the same shall not include any children adopted by either Maynard Conkle or John Conkle after August 30, 1964, the date of testator's death."

This is the judgment appealed from.

II.

The time-table of important events in this case is as follows.

(1) March 25, 1955—Randall Conkle born.

(2) March 27, 1955—Randall Conkle came to live in the home of John Conkle and Maxine Conkle, his wife.

(3) May 28, 1955—Cleophas Conkle executed his last will and testament.

(4) February 10, 1956 (on or about)—Randall Conkle was legally adopted by John Conkle and Maxine Conkle.

(5) June 27, 1958—Cleophas Conkle executed a codi-

cil to his will and otherwise ratified and confirmed it in all respects.

(6) January 11, 1959—Carol Conkle was born.

(7) February 2, 1959 (on or about)—Carol Conkle came to live in the home of John Conkle and Maxine Conkle.

(8) November 3, 1959 (on or about)—Carol Conkle was legally adopted by John Conkle and Maxine Conkle.

(9) August 30, 1964—Cleophas Conkle died testate without having made any changes in his will subsequent to June 27, 1958.

### III.

Appellants assign two errors:

(1) The court erred in permitting parol evidence to determine the intention of the testator when the testator designated "living grandchildren" as beneficiaries in his will;

(2) The decision of the court decreeing that defendants Randall Conkle and Carol Conkle shall in any and all respects be determined to be within the class of and treated as two of "my living grandchildren" and "my then living grandchildren" as used and set forth in Item 2: of the decedent's last will and testament is contrary to law and against the manifest weight of the evidence.

### IV.

Before we deal with the problems raised by the briefs, we set forth, *sua sponte*, our judgment that the attempted adjudication of the rights of children, if any, who might be or might have been adopted by any of testator's children after the testator's death, August 30, 1964, is a void adjudication because such persons, if any there be or may come to be, are not now subject to the jurisdiction of the court in this case. They have not been before the court and it is not possible adversely to determine their rights in this action. Moreover, we declare that such possible after-adopted children must be considered "grandchildren," and members of the class if they survive. The journal entry shall reflect our judgment modifying the judgment of the probate court in this respect.

As thus modified, the judgment of the probate court will be affirmed. Both assignments of error are overruled. Our reasons follow.

(1) R. C. 3107.13, in effect at the time of the execution of the will and the codicil, abrogates the so-called "stranger to the adoption rule" in Ohio and, as such statute is applied to the four corners of the will in this case, compels the conclusion, as modified, reached by the pro-bate court, without the aid of the extrinsic evidence, that the testator actually subjectively considered the adopted children of his son John to be his own "grandchildren."

R. C. 3107.13 reads as follows:

"Legal rights after adoption.

"Except in the case of a natural parent married to the adopting parent, the natural parents, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them, and the child shall be free from all legal obligations of obedience or otherwise to such parents. The adopting parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child, and the child shall be invested with every legal right, privilege, obligation, and relation in respect to education and maintenance as if such child had been born to them in lawful wedlock. For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of an estate, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

"(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parents.

"(B) In case of adoption by a stepfather or stepmother, the rights and obligations of the natural parent who is the spouse of the adopting stepparent shall not in any way be affected by such adoption.

"This section does not debar a legally adopted child from inheriting under a will identifying such child by any name by which he has been or is known or other clear identification, property of such child's natural parent or parents or other natural kin as in case of bequest or devise to any other person.

"For the purpose of inheritance to, through and from a legally adopted child, such child shall be treated the same as if he were the natural child of his adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession, except where one of the natural parents of such child has died and his living parent remarries and such child is adopted by such stepfather or stepmother, in which case his right of inheritance from or through his natural parent or other natural kin shall not be affected by his adoption."

(2) Even applying, arguendo, the so-called "stranger to the adoption rule" to this case, we find the other language of the will, plus the extrinsic evidence, supports the judgment of the probate court as herein modified.

## V.

A latent ambiguity is a defect which does not appear on the face of language used or an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects or things.

The principle is firmly established in Ohio that extrinsic evidence is admissible where there is a latent ambiguity in a will, arising out of extrinsic circumstances, to resolve the ambiguity and aid in the interpretation or application of the will. Since latent ambiguity is only disclosed by extrinsic evidence, it may be removed by such evidence. *Shay* v. *Herman* (1948), 85 Ohio App. 441, 83 N. E. 2d 237; *Fifth Third Union Trust Co.* v. *Athenaeum of Ohio* (1959), 84 Ohio Law Abs. 208; *In re Karl* (1955), 78 Ohio Law Abs. 266; 152 N. E. 2d 346, affirmed, 78 Ohio Law

52

Abs. 273; 56 Ohio Jurisprudence 2d 76-78, Wills, Sections 534 and 535.

In this case, the words "my then living grandchildren" were used by the testator as the only identification of the beneficiaries of a gift of the corpus of a trust after the death of his last surviving child. This was an express provision for beneficiaries who might come into the class after the testator's death. Additionally, at the death of the testator, his son, John Conkle, had two adopted children. This latent ambiguity is compounded by the previously quoted portions of the will itself.

Under R. C. 3107.13, the adopted children of John Conkle would have enjoyed the latter's share of the income mentioned in the first sentence of the above quoted portion of the will had John Conkle preceded his brother Maynard in death. These "children" for whom the testator so provided are also logically members of the class of "living grandchildren" mentioned in the very next sentence of the quote, and we so hold.

We further hold that the stipulation in the will providing for "* * * children of such deceased child so long as any of my three children shall live" * * * is, by operation of R. C. 3107.13, a gift in favor of Randall and Carol Conkle upon the contingency that their "adopting father" John Conkle predeceased his brother Maynard, and is, therefore, "language in the will to the contrary" of the presumption set forth in paragraph three of the syllabus of *The Third National Bank and Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355, which reads:

"Where a testator bequeathed property to 'each of my then living grandchildren, whether born prior or subsequent to my deceased,' there is a presumption, in the absence of any language in the will to the contrary, that the testator intended only the blood children of his children to partake of his bounty."

Although testator's knowledge of the intention to adopt Carol Conkle did not come to him until seven months after the execution of his codicil, in June 1958, and the final adoption of Carol Conkle did not take place until

November 3, 1959, some sixteen months after the codicil execution date, we hold that the extrinsic evidence as to conditions and circumstances surrounding the testator and both adopted children between the codicil execution date and the date of testator's death clearly shows that both these children were "grandchildren" of testator in his mind and heart. Testator republished his will by codicil more than two years after he knew his son John adopted Randall Conkle, and thereafter lived for more than five years with knowledge of the adoption of Carol without changing his will to exclude adopted persons.

The thrust of the second assignment of error is that the "stranger to the adoption rule" is an irrebuttable rule of construction limiting "grandchildren" to blood relatives and prohibiting any evidence of testator's intent outside the four corners of the will.

A review of the adoption code as it was enacted in 1859, together with the subsequent amendments through 1951, including the enactment of G. C. 8004-13 itself, reveals a legislative purpose to reverse such a rule.

The 1910 statute, as it related to succession and inheritance by an adopted child, limits the right of an adopted child to inherit *from* his adoptive parents and natural parents, and precludes inheritance *through* adoptive parents. G. C. 8030 (Title VI, Chapter 3) reads, in pertinent part, as follows:

"* * * Such child shall be the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of the child of such person begotten in lawful wedlock. * * *"

Subsequently, in 1921, the legislature enacted a broader rights and privileges clause is this area, under G. C. 8030, as follows:

"* * * and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance, and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, such child shall not be capable

of inheriting property expressly limited to the heirs of the body of the adopting parent or parents * * *.''

We note that the legislature added the provision preventing an adopted child from inheriting where there is an express limitation to ''heirs of the body.''

In 1932, the 1921 section was republished (114 Ohio laws 320, 474, G. C. 10512-19, effective January 1, 1932) with the following language added after the limitation to heirs of the body:

''* * * but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing * * *.''

The 1932 amendment reflects the intent of the legislature to change the rule established by court decisions which had theretofore prevented adopted children from inheriting *through* their adopting parents. The committee comment after G. C. 10512-19, entitled ''Rights and duties of adopting parent and adopted child,'' notes that ''the new matter permits adopted children to inherit through as well as from the adopting parent.''

In 1944, the Legislature removed the limitation as to children of adopted children. Former G. C. 8030 and G. C. 10512-19 denied children of adopted children, who predeceased their adopting parents, from inheriting that share, per stirpes, to which they would have been entitled had their parents not been adopted. As a consequence, there was an additional right established for adopted children— the right of inheritance *to, through* and *from* their adoptive parents. All adopted children and their children were granted the right to be treated the same as natural children insofar as the adoptive parents were concerned. G. C. 10512-23 (effective January 1, 1944).

Finally, in 1951, in G. C. 8004-13, the legislature removed all restrictions by employing the language which is now contained in R. C. 3107.13, effective 10-1-53. Such language was in effect at the time Cleophas Conkle executed

his will, at the time his will was republished by codicil and at the time of his death.

The Supreme Court of Ohio in *Central Trust Co.* v. *Bovey* (1971), 25 Ohio St. 2d 187, 190 stated:

"Let us make our position in this appeal clear. This is not a suit to interpret R. C. 3107.13, the adoption statute in effect in 1966 when the life tenant died. This court will certainly meet that need in a proper case. Rather, the question here is concerned with the intention of the settlor at the time of the creation of the trust. It is that intention and the law then existing, which governs the terms of the trust."

The court went on to say, at 191:

"Under the facts in this case we must adhere to the 'stranger to the adoption' doctrine. The document under scrutiny speaks as of the year 1930, and R. C. 3107.13, as in effect since 1951, certainly does not confer authority on this court to conclude that the trust we have before us is presumed to include this adopted child."

The following quotation from *Estate of Coe* (1964), 42 N. J. 485, 201 A. 2d 571 used in *Weitzel* v. *Weitzel,* (1968), 16 Ohio Misc. 105, 111 is persuasive:

"We cannot believe it probable that strangers to the adoption would differentiate between the natural child and the adopted child of another. Rather we believe it more likely that they accept the relationships established by the parent whether the bond be natural or by adoption and seek to advance those relationships precisely as that parent would. None of us discriminate among children of a relative or friend upon a biological basis. We ought not impute to others instinct contrary to our own."

The Minnesota Supreme Court in the case of *In re Patrick's Will* (1960), 259 Minn. 193, 106 N. W. 2d 888 at page 890, said:

"We have come to realize that it is not the biological act of begetting offspring—which is done even by animals without family ties—but the emotional and spiritual existence of living together that creates a family. The family

relationship is created far more by love, understanding, and mutual recognition of reciprocal duties and bonds, than by physical genes.''

We hold that the Legislature, by the enactment of R. C. 3107.13, has repealed the ''stranger to the adoption'' doctrine insofar as it applies to instruments executed after its effective date.

We hold that R. C. 3107.13, which speaks expressly of wills governing inheritance, confers upon a legally adopted child the same status and rights, and the same legal relationship to his adopting parents as if he were born to them in lawful wedlock, and not to his natural parents, and that, therefore, limitations in wills executed after the effective date of the statute in favor of ''grandchildren'' of the testator apply to adopted children of a testator's children in the absence of express language in the will to the contrary.

We hold that Randall and Carol Conkle are ''living grandchildren'' of Cleophas Conkle, and we declare that upon the death of the last survivor of the children of Cleophas Conkle, the class composed of his ''then living grandchildren'' includes the then living adopted children of his three named children.

Judgment affirmed as modified. Cause remanded for further proceedings according to law consistent with this opinion.

*Judgment affirmed.*

RUTHERFORD, P. J., and VAN NOSTRAN, JJ., concur.

RUTHERFORD, P. J., concurring. The testator, Cleophas Conkle, executed his last will and testament on May 28, 1955. His intention in providing bequests, as they may relate to adopted children of his children and/or to his grandchildren, must be determined from within the four corners of the will in the light of the law existing at the time of the execution of such last will and testament, to wit: R. C. 3107.13, in effect since August 28, 1951 (124 Ohio

Laws 178 [193]). See *Central Trust Co.* v. *Bovey,* 25 Ohio St. 2d 187, where an instrument executed in 1930 was determined by the court to have been executed in accordance with the statute in effect at the time. Also, *Third National Bank and Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355.

In *Central Trust Co.* v. *Bovey, supra,* at 190, the Supreme Court said:

"Let us make our position in this appeal clear. This is not a suit to interpret R. C. 3107.13, the adoption statute in effect in 1966 when the life tenant died. This court will certainly meet that need in a proper case. Rather, the question here is concerned with the intention of the settlor at the time of the creation of the trust. It is that intention and the law then existing, which governs the terms of the trust."

In the instant case, we have before us the question of the intention of the testator at the time of the execution of his last will and testament subsequent to the effective date of R. C. 3107.13 and, therefore, that question which the Supreme Court said it would meet in a proper case.

Since the intention of the testator must be determined in the light of R. C. 3107.13, in effect at the time of execution of the last will and testament, the first question confronting us is that of the intention of the legislature by the enactment of such Section, effective August 28, 1951, although the ultimate issue remains one of construing the intention of the testator from the terms of the will in light of the statute. The ultimate question before us is whether the testator by using the words "children" of his children and the words "grandchildren" intended to exclude persons not of the blood of his own family.

The law of Ohio governing inheritance of and succession to real or personal property as it affects the status and legal rights of a legally adopted child has been subject to constant changes, each of which have made the status and rights of a legally adopted child more alike to those of a natural born child of the adopting parent.

G. C. 8030, effective August 5, 1921 (which made no reference to property passing by will), provided that

when property passes by law, an adopted child could inherit from but not through an adopting parent. Such section read, in part:

"* * * and the child shall be invested with every legal right, privilege, obligation and relation in respect to * * * the rights of inheritance of real estate or to the distribution of personal estate *on the death of such adopting parent or parents as if born to them in lawful wedlock * * ***." (Emphasis added.)

Under this status and right of an adopted child, the court in *Albright* v. *Albright* (1927), 116 Ohio St. 668 held that where a testator makes provision in his will for a child of his son, because the testator is a stranger to the adoption, there arises a presumption that by the use of the word "child" he means natural child, unless the context clearly shows that he means to use the term in a sense including adopted as well as natural children. It is important to note that G. C. 8030 dealt with the right of inheritance to real estate or the distribution of personal property *only upon the death of the adopting parent or parents* and contained no provision relative to the death of a grandparent.

By the enactment of G. C. 10512-19, effective January 1, 1932, there was added to the provisions of G. C. 8030, the following language:

"* * * but shall be capable of inheriting property expressly *limited by will or by operation of law to the child or children, heir or heirs, or next of kin, of the adopting parent or parents,* or to a class including any of the foregoing." (Emphasis added.)

In 1946, the Supreme Court of Ohio decided the case of *Flynn, Admr.,* v. *Bredbeck* (1946), 147 Ohio St. 49, wherein it was held that as a result of the enactment of G. C. 10512-19, an adopted child inherits through as well as from his adopting parent. The third paragraph of the syllabus of that case reads:

"By the terms of Section 10512-19, General Code (114 Ohio Laws, 474), reciting that an adopted child shall be capable of inheriting property expressly limited by will or by operation of the law to the child, heir or next of

kin of the adopting parent, an adopted child was enabled to inherit property through as well as from his adopting parent, whether such property pass by will or by operation of law."

It is noted, however, that G. C. 10512-19 made no reference to property expressly limited by will to "grandchildren" except when a devise or bequest in the will was defined in the will as being to the child of a son or daughter, to an heir or heirs at law, or next of kin *of the adopting* parent, or to a class including any of the foregoing. In the case of *The Third National Bank & Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355, Julia S. Cornell died February 12, 1944, leaving a will dated March 14, 1931, with 18 codicils executed at various times, all of which were admitted to probate on February 19, 1944.

At the times of execution of her will and all of the codicils and at the time of her death, testatrix had a son and a daughter and four grandchildren, all of which were the blood children of testatrix's daughter. Testatrix's son had no children but, subsequent to testatrix's death, adopted two children.

The third item of the tenth codicil to testatrix's will, which was executed on January 19, 1935 (after the effective date of G. C. 10512-19), provided, in part, as follows:

"Item Third: I give and bequeath to the Third National Bank and Trust Company of Dayton, Ohio, a corporation, the sum of one million dollars ($1,000,000), in trust, nevertheless, for the following purposes: [several bequests to brother, sister-in-law and cousins]

"I further direct that out of the net income of said trust fund such trustee shall pay *to each of my then living grandchildren, whether born prior to or subsequent to my decease the sum of five thousand dollars ($5,000) per annum,* in equal monthly installments until they have respectively arrived at the age of twenty-one (21) years, the children of any then deceased my grandchild to receive the amount their parent would have received, if then living. * * * Upon the arrival of my youngest then living grandchildren at the age of thirty years, I direct that such

trustee shall pay and distribute the trust fund then in its hands, including both principal and accumulated income, if any, to my then surviving grandchildren, in equal portions, the children of any deceased grandchild to take the share their parent would have received, if then living."

In the case of *The Third National Bank & Trust Co.* v. *Davidson, supra,* the court, at page 362, pointed out that:

" * * * the bequests in the tenth codicil were directly from testatrix to her grandchildren and her intent must be ascertained from within the four corners of the codicil, although it is presumed that the testatrix knew the adoption statutes in effect at the time she executed the codicil and such statutes must be considered in such ascertainment."

The court pointed out that the testatrix was not a party to any adoption proceedings, that she adopted no grandchildren and could not do so for the reason that there is no provision in Ohio for the adoption of grandchildren.

Holding that where grandchildren took property directly by devise or bequest from the testator, adopted children were not included, the court further stated, at page 362, the following:

"*We would have a different question before us if she had made the provision in her tenth codicil that property passed to her children and thereafter to her grandchildren or to her children's children.*" (Emphasis added.)

This foregoing statement in *Trust Company* v. *Davidson* would be applicable upon the facts of the instant case, in which the income from the property does pass, first to her three children and, next to the children of any deceased child; or, if the deceased child were to leave no children surviving, then the income from such deceased child's share is to be distributed equally among living grandchildren. Upon the death of the last survivor of such children, the trust is to terminate with a distribution to be made equally among the then living grandchildren. Thus, in the instant case, the property does go first to the children and then to the children's children and/or grandchildren. Had such been the circumstances in the *Davidson* case, it would

appear in view of the statement made at page 362 of the opinion, *supra,* that the court would have distinguished the case from one where property passed directly to grandchildren and may well have held that adopted children would be included, if the facts had been those now before us.

G. C. 10512-19 was repealed and R. C. 3107.13, which became effective August 28, 1951 (as G. C. 8004-13) omits the following words:

"* * * but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs, or next of kin, or to a class including any of the foregoing."

In lieu thereof, such section reads:

*"For all purposes* under the laws of this state, *including without limitation all* laws and *wills governing* inheritance of and *succession to real or personal property* * * * *a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock* and not born to the natural parents * * *." (Emphasis added.)

The term "grandchild" has a well defined meaning of being "a son's child or a daughter's child." When used in light of the foregoing provisions of R. C. 3107.13, it thus appears that the term "grandchild" used by the testator in his will, without other words of qualification or limitation, can only be held as a matter of law to include children of his sons or daughter whether by blood or adoption, since, *in light of the statute, absent other words of qualification or limitation, for all purposes under the laws of this state, including without limitation all* laws and *wills governing* inheritance of any *succession to real or personal property, a legally adopted child shall have the same status and rights and bear the same legal relationship to the adopting parent as if born to them in lawful wedlock.* Thus, when a grandparent in his or her last will and testament makes reference to a child of a son or daughter or to a grandchild which likewise means a child of a son or

daughter, included therein, in light of the statute, by the words used, absent other words of qualification or limitation, is the adopted child of the son or daughter who, by the statute governing such succession by will, has been given the same status and rights as if born to the son or daughter in lawful wedlock.

From the provisions of R. C. 3107.13, it appears that the legislature has *without limitation* intended to give to adopted children the same status for purposes of succession under wills as they have under the laws governing inheritance, with the exception that the testator, by so providing, may exercise the same right of excluding adopted children of a son or daughter as he has to exclude a child of the son or daughter who is of the family blood, provided his intent appears other than by referring to them as grandchildren or as children of his sons or daughters, which terms, in light of the statute, are insufficient to exclude legally adopted children of a son or daughter, just as they are insufficient to exclude a particular child or children of the family blood—their status and rights under the statute being the same.

Under the terms of the will, construed in light of the statute, the admission of parole evidence was superfluous but not prejudicial to appellants.

For the reasons set forth, I concur in the syllabus and in the judgment rendered by the majority opinion.