The Cleveland Trust Company *v.* Schumacher et al.

(No. 901,900—Decided June 26, 1973.)

Common Pleas Court of Cuyahoga County.

*Messrs. Nicola, Marsh & Gudbranson* and *Mr. Kenneth V. Nicola,* for plaintiff.

*Messrs. Black, McCuskey, Souers & Arbaugh* and *Mr. Albert B. Arbaugh,* for defendant Margaret Schumacher.

*Messrs. Jones, Day, Cockley & Reavis* and *Mr. Robert B. Nelson,* for defendants Ann Schumacher Renkert and others.

*Messrs. Parks, Eisele, Lawrence & Bates* and *Mr. Ralph C. Anzivino,* for defendant Edward A. Eisele, guardian and trustee.

Patton, J.   The Cleveland Trust Co., plaintiff herein, and trustee under an *inter vivos* insurance trust agreement entered into October 13, 1941, and modified by modification of September 21, 1951, with Howard F. Schumacher, deceased, as settlor, seeks an order of this court declaring the

rights of the adopted children of a daughter of Howard Schumacher under said trust agreement.

The chronology of pertinent facts in this case begins on October 13, 1941, when Howard F. Schumacher established an *inter vivos* insurance trust, with plaintiff, Cleveland Trust Company, as trustee. On September 21, 1951, Howard F. Schumacher modified the insurance trust by an instrument of modification. It is the language of this modification as it applies to the adopted children of Ann Schumacher Renkert, daughter of Howard F. Schumacher, which the court is asked to construe.

The dispositive provisions of the trust modification in question are as follows:

"After my said children shall respectively attain the age of twenty-one (21) years, or shall have completed her college education, if any such one is in college, whichever is the later, thereafter the Trustee shall pay the entire net income derived from the share held for the benefit of such child, to such child, in quarterly installments or oftener, during her lifetime. In addition thereto, the Trustee is authorized and empowered to pay to or for the benefit of such child, from the principal of the share of the trust estate held for such child's benefit, such sum or sums as the Trustee may deem necessary or proper to provide for her suitable support, maintenance and comfort and for the purchase of a home, entering into a suitable business, for any emergency, or for the suitable support, comfort and education of *any children who may be dependent upon such child*, if, in the judgment of the Trustee, such child's income hereunder and from other sources is insufficient for such purposes.

"Upon the death of either of my children, the share of the trust estate held or intended to be held for her benefit shall vest in and be distributed to her *issue, per stirpes*; but if any of such issue shall not have attained the age of twenty-one (21) years at such time of distribution, then in the case of each such issue the Trustee shall retain the distributive share of such one until he or she becomes twenty-one (21) years of age, and pending distribution to such one, the

Trustee shall pay to or expend for the benefit of such one from time to time such amounts of the income or principal or both of such one's distributive share as it may deem necessary or proper for such one's suitable maintenance, support, comfort and education, any unexpended income being accumulated and added to the principal of the distributive share from which it was derived. In event either of my children dies without leaving issue surviving to such time of distribution, then the share of the trust estate held or intended to be held for the benefit of such deceased child shall be added to the other share and shall be subject in all respects to the trusts, terms and conditions herein set forth with regard thereto.

"If any portion or all of the trust estate remains undisposed of at such time of distribution by reason of there being no one then surviving who is entitled to receive distribution thereof or to have it held by the Trustee for his or her benefit, then at such time such portion or all of the trust estate, as the case may be, shall vest in and be distributed to such person or persons who, at the time of the death of the survivor of my said children, would be entitled thereto if such property had then belonged to me and I had then died intestate domiciled in the state of Ohio.

"Notwithstanding anything herein contained to the contrary, the provisions herein made for my children and their issue are intended to apply in the same proportion to any child or children hereafter born to me and their respective issue, to the end that all afterborn children shall take equal shares in the trust estate with my children hereinbefore named, and that the same trusts, terms and conditions herein made with respect to the shares of my children hereinbefore named shall apply to the shares of all afterborn children. This provision for afterborn children, or any other provisions herein, shall not, however, be construed to postpone the vest of the trust estate for a period longer than twenty-one (21) years after the death of the last survivor of the beneficiaries hereunder in being on October 13, 1941, at which time the trust estate, or any portion thereof, shall, in any event, vest in the beneficiaries

then entitled to receive income therefrom and in the same proportions." (Emphasis added.)

Specifically, the question before the court is whether the term "issue" as used in the instrument in question operates to allow the inclusion of the adopted children of the settlor's daughter as beneficiaries under the trust.

Subsequent to the modification of the trust agreement in September, 1951, Ann Schumacher married, and on February 8, 1958, Richard D. Raff, III, was adopted by Ann Schumacher Raff and her husband, Richard D. Raff, Jr. On April 2, 1958, Howard F. Schumacher died. On July 12, 1962, Ann and Richard Raff, Jr., adopted a second son, Andrew Howard Raff. Anne's husband, Richard Raff, Jr., died in 1967 and Ann was remarried in 1969, to David P. Renkert.

Howard F. Schumacher's only other child, Marilyn Schumacher Shortridge, married and has had two natural children by that marriage. There is no question that these children are beneficiaries under the terms of the trust cited above.

The interpretation of trust instruments in an action brought by a trustee is a matter properly brought before this court in the exercise of its inherent equity jurisdiction over trusts and trustees. (54 Ohio Jurisprudence 2d 74-75, and cases cited therein.)

The rights of legally adopted children as to inheritance and succession under the laws of the state of Ohio are governed by R. C. 3107.13. This section has recently been amended, effective January 26, 1972. However, the Ohio Supreme Court in *Central Trust Co.* v. *Bovey* (1971), 25 Ohio St. 2d 187, has said that:

"The intention of a settlor of an *inter vivos* trust * * * should be determined in light of the law existing at the time of the creation of the trust * * *."

Therefore it is necessary to examine the "adoption statute" in effect on September 21, 1951, the date Howard F. Schumacher modified the trust agreement, to determine Howard F. Schumacher's intention in using the term "issue" in his trust instrument since it must be presumed

that a settlor knew the provisions of the adoption statutes in effect when he executed the trust modification, *National City Bank of Cleveland* v. *Judkins* (1964), 8 Ohio Misc. 119, 128, 219 N. E. 2d 456, and *Third National Bank & Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355.

The adoption statute in effect in September, 1951, was G. C. 8004-13 (now R. C. 3107.13 as amended):

"Except in the case of a natural parent married to the adopting parent, the natural parents, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them, and the child shall be free from all legal obligations of obedience or otherwise to such parents. The adopting parent or parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child, and the child shall be invested with every legal right, privilege, obligation, and relation in respect to education and maintenance as if it had been born to them in lawful wedlock. For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

"(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parent or parents;

"(B) In case of adoption by a stepfather or stepmother, the rights and obligations of the natural parent who is the spouse of the adopting stepparent shall not in any way be affected by such adoption.

"This section does not debar a legally adopted child from inheriting, under a will identifying such child by its adopted name, or later acquired name, property of its natural parent or parents or other natural kin as in the case of a bequest or devise to any other person;

"For the purpose of inheritance to, through, and from

a legally adopted child, such child shall be treated the same as if it were the natural child of its adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession. (124 Ohio Laws 178, 193, effective 8-28-51.)''

G. C. 8004-13, is derived from former G. C. 10512-23.

This statute was amended, effective August 28, 1951, approximately three weeks before Howard F. Schumacher modified his trust instrument, to include the provision which is of particular application to the instant case:

''For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real and personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents * * *.''

This express language thus ''confers upon a legally adopted child the same status and rights, and the same legal relationship to his adopting parents as if he were born to them in lawful wedlock * * *.'' Conkle v. Conkle (1972), 31 Ohio App. 2d 44, 56.

It has been agreed that Howard F. Schumacher, at the time of the execution of the trust modification in 1951, was a ''stranger to the adoption'' to the extent that in 1951 his daughter Ann did not have an adopted child. The ''stranger-to-the-adoption'' doctrine is a rule of construction wherein, absent a showing of contrary intention on the part of a settlor or testator, it is ''presumed that a testator [or settlor] who has not been a party to any adoption proceedings prefers his own blood relatives to strangers.'' Trust Co. v. Davidson, supra, at pages 366 and 367. See, also, National City Bank v. Judkins, supra, at page 130.

This court, however, is not persuaded that the ''stranger-to-the-adoption'' doctrine is a rule of construction which should be given effect or credence in the instant case or any other. Additionally, the Court of Appeals for Coshocton County in Conkle v. Conkle, supra, at page 56, has

specifically held "that the Legislature, by the enactment of R. C. 3107.13 [formerly G. C. 8004-13], has repealed the 'stranger to the adoption' doctrine insofar as it applies to instruments executed after its effective date [8-28-51]." This court concurs in that opinion and cites with approval the reasoning and conclusions reached by the Probate Court of Cuyahoga County in *Weitzel* v. *Weitzel* (1968), 16 Ohio Misc. 105, 239 N. E. 2d 263, and particularly the conclusion reached, at page 115:

"1. The stranger-to-the-adoption presumption is unfair, inequitable, and has no reationship to the actual attitude and experience of the general public, the courts and students of adoption, and therefore should be avoided either by judicial action or by legislative fiat."

The experience of other jurisdictions illustrates an increasingly strong trend, in statutes and cases, "to include the adopted child in the class [here, 'issue'] unless the testator's [settlor's] intent not to include him clearly appears from the instrument." Clark, Law of Domestic Relations (1968), 662-663, and cases and statutes cited therein. The Ohio Legislature has indicated its acceptance and approval of this trend by amending the Ohio adoption statute, R. C. 3107.13, effective January 26, 1972, to include the following language in that statute:

"Unless an express intention to the contrary appears in a will or trust instrument, 'child,' 'children,' 'issue,' 'grandchild,' or 'grandchildren' includes a legally adopted child for the purpose of inheritance to, through, or from the adopting parents of such child, irrespective of when such will was executed or such trust was created."

In any event, the fact that Howard F. Schumacher was not a party to the adoption of Ann Schumacher Renkert's children and that he executed the trust modification prior to the adoption does not have a substantial bearing upon the determination to be made in this case in view of the holdings in the *Conkle* and *Weitzel* cases. Thus, unless a contrary intention appears from the instrument itself, or from admissible extrinsic evidence, the court must find that Howard F. Schumacher intended that any legally adopted

children of his daughters were to have the same rights and status as natural children of his daughters, under the authority of the adoption statute in force in September, 1951, when he executed his trust modification.

The modification, cited above, contains the provision that the trustee is empowered to pay from the principal held for the benefit of each of Schumacher's daughters such sums as are necessary "for the suitable support, comfort and education of *any children* who may be dependent upon such child [daughter] * * *." (Emphasis added.)

By the use of the language "any children," it appears to be obvious that Howard F. Schumacher intended either natural or adopted children, in appropriate circumstances, to be supported from the trust funds. It is difficult to imagine what term or terms could more clearly indicate that all children dependent upon Schumacher's daughter should be included within the terms of the trust.

It is a matter of some import to note that this particular provision, among many others, is not to be found in the original trust instrument. In view of the facts that the adoption statute was amended in August, 1951, and that Howard F. Schumacher executed the modification in September, 1951, it is a reasonable inference that Schumacher may have wanted to modify the original trust in light of the amended statute. This would tend to reinforce the position that he did in fact intend that adopted as well as natural children of his daughters were to be beneficiaries of his trust modification.

There has been testimony presented to the court by John A. Shortridge, the husband of Marilyn Schumacher Shortridge and natural father to John A., Jr., and Amy Lynn Shortridge, that Howard F. Schumacher was aware that his daughter Ann could not have natural children and that she intended to adopt children. He further testified that Howard F. Schumacher "was all for this [adoption] and looked upon it favorably." John A. Shortridge also testified that Howard F. Schumacher was aware, before his death, that Richard D. Raff, III, had been placed for adop-

tion with Ann and her husband, and that the decree of adoption was finalized in February, 1958, approximately two months before his death, and that he was in favor of the adoption. Howard F. Schumacher visited with his daughter, Ann, and her adopted child every week up until his death. This being the case, it is reasonable to believe that had Schumacher intended that this adopted child was not to be a beneficiary of his trust, he had ample opportunity to again modify the trust to that end. By the same token, if he had believed that the trust as it existed after the 1951 modification excluded, or did not include, adopted children, he could have again modified it. Since he did neither, the court feels that Howard F. Schmacher believed that the trust and modification adequately provided for adopted children as he had intended when he modified the trust in 1951.

It is the finding of the court that Howard F. Schumacher intended that any legally adoptd children of his daughters be included and qualify as issue under the terms and meaning of the modification of the trust herein being construed,

It Is Therefore Ordered, Adjudged and Decreed that Richard D. Raff, III, and Andrew Howard Raff, the legally adopted children of Ann Schumacher Renkert, or the issue or adopted children or either of them, are issue under the terms and meaning of the modification of the insurance trust of Howard F. Schumacher, deceased; and further that the plaintiff is authorized to make distributions to or for them from time to time, according to and under the terms of the insurance trust agreement and modification, should distribution of either interest or principal be at any time required under the provisions of the insurance trust agreement and modification of Howard F. Schumacher, deceased.

*Judgment accordingly.*