811 F.2d 604
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia R. COOMER, Plaintiff-Appellee,
v.
The FIFTH THIRD BANK, Trustee of the Trust of Edgar Paul
Romaine, et al., Defendants,
Althea R. WELCH, Defendant-Appellant.
 No. 86-3045.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1986.
 
 Before GUY, Circuit Judge, EDWARDS, Senior Circuit Judge, and ALLAN EDGAR, District Judge.*
 PER CURIAM.
 
 
 1
 This appeal involves the interpretation of a trust agreement between the settlor, Edgar Romaine, and the trustee, the Fifth Third Bank. The trust provided in substance that, upon the death of the settlor, the trust corpus be paid to his brother, William Romaine. The trust further provided, in the following language which gives rise to this appeal:
 
 
 2
 (3) In the event that the said William W. Romaine shall not survive Grantor, then the Trustee shall divide the then remaining principal and all accrued and accumulated but undistributed income, ... into that number of equal shares as equals (i) the number of children of Grantor's brother, William W. Romaine, then living,....
 
 
 3
 William Romaine predeceased the settlor, leaving one natural daughter, Althea Welch, and one step-daughter, Patricia Coomer. Upon settlor's death, Patricia Coomer sought a declaratory judgment determining her interest in the trust. The trustee-bank, siding with defendant Welch (grantee's natural daughter), took the position that the words "child" and "children" were clear and unambiguous and that, as the only natural "child" of the grantee, defendant Welch was entitled to the entire trust corpus. The district court found that plaintiff Coomer qualified as a child of William Romaine, thereby entitling her to one-half of the trust assets, and defendants Welch and the trustee-Bank appealed. For the reasons which follow, the decision of the district court is affirmed.
 
 I.
 
 4
 Jurisdiction is conferred upon this court pursuant to the diversity provisions of 28 U.S.C. Sec. 1332 and Sec. 2201. The relevant facts, many of which were stipulated between the parties, are as follows.
 
 
 5
 Plaintiff was a child of five when William Romaine met and married her mother. She is not Romaine's natural child, nor did he ever initiate formal adoption proceedings with respect to her.[1] Shortly after their marriage, plaintiff was taken into the Romaine household where she was reared as a daughter and, after defendant Welch's birth, as her sister. Evidence presented at trial established that plaintiff used the last name of "Romaine" throughout her childhood and adolescence, and that the settlor, Edgar Romaine, frequently referred to her as his niece in conjunction with his other two nieces, plaintiff's step-sister and the daughter of another brother. It was further established that plaintiff had been a member of William Romaine's household for twenty years until her marriage in 1953, and that settlor had never made a distinction between Welch and Coomer, signing letters to both women as "Uncle Paul" and, in 1980, dividing a substantial amount of family silver between both plaintiff and defendant equally.
 
 
 6
 In February of 1975, settlor executed both his will and the trust agreement. Although the will was subsequently amended several times, no change was ever made in his initial bequest, giving one thousand dollars to each of his three nieces, which included plaintiff. William Romaine died intestate in 1978; settlor died in 1984.
 
 II.
 
 7
 Although defendant Welch presents several allegations of error, the issues distill into the following two: (1) whether the trial court erred in failing to grant her motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c); and (2) whether the court's factual finding that settlor intended the plaintiff to share the trust assets equally with the defendant was clearly erroneous.
 
 
 8
 With respect to the first issue, we note that the trial judge treated the motion to dismiss as one for summary judgment, taking into account evidence submitted by the plaintiff as to the existence of a latent ambiguity in the use of the word "children." On appeal, our standard of review of a denial of a motion for dismissal or summary judgment is the same as that of the district court; namely, the record as a whole must be viewed in the light most favorable to the party opposing the motion. See Crippen v. Kheder, 741 F.2d 102 (6th Cir.1984). The effect of the trial judge's denial of the motion was to establish, as a matter of law, that the use of the word "children" constituted a latent ambiguity requiring the admission of extrinsic evidence to effectuate the intent of the settlor.
 
 
 9
 At the outset, we find, as did the district court, that this diversity action is governed by Ohio law. Erie Railroad v. Tompkins, 304 U.S. 64 (1938). It is well settled under Ohio law that the intent of the settlor at the time of creation of the trust is controlling. Central Trust Co. v. Bovey, 25 Ohio St.2d 187, 267 N.E.2d 427 (1971). The courts have consistently articulated the view that it is the settlor's intent, even if contrary to the language contained in the document, which should control the disposition of property. In the analogous context of an action for construction of a will, the court has stated that "[t]he language of a will is to be given its ordinary, legal significance, unless a contrary intention on the part of the testator appears from the will itself, interpreted in the light of the circumstances of which testator knew." The Fifth Third Union Trust Co. v. Athenaeum of Ohio, 12 Ohio Op.2d 188, 194, 169 N.E.2d 707, 715 (Probate Ct.1959) (emphasis added). In finding ambiguity in the testator's language regarding a bequest to a charitable institution which could have referred to two different organizations, the Athenaeum court observed that "more consideration is paid to substance than to form. The obvious intention of the testator must prevail over the strict grammatical construction of his testamentary language." 12 Ohio Op.2d at 197, 169 N.E.2d at 718.
 
 
 10
 The defendant argues that the intention of the settlor must be ascertained from the words of the trust instrument alone, and that those words must be taken in their ordinary meaning. They cite the Ohio Supreme Court case of Albright v. Albright, 116 Ohio St. 668, 157 N.E. 760 (1927), for the proposition that the word "children" includes only natural-born children related by blood to the testator. Therefore, they contend, the district court improperly allowed extrinsic evidence to vary the clear meaning of the trust instrument. In further support of this argument, defendant points to a clause contained in the trust agreement which states that "[w]herever the word "child" or "children" is used herein, it shall include lawfully adopted child or children of Grantor's brother...." Since plaintiff was neither the natural nor adopted child of the grantee, defendant argues, she is excluded from taking under the plain language of the agreement.
 
 
 11
 Initially, we find the case of Hinkson v. Adkins, 25 Ohio Nisi Prius (n.s.) 16 (1924), which was neither cited nor addressed by the defendant, to be highly probative on this issue. In that case, the court was faced with the construction of a devise to a husband and wife "and children." The court stated that, while the word "children" normally connotes only immediate legitimate descendants or blood relatives of the beneficiary, and does not comprehend those who have acquired the character of a child by marriage, this rule must give way to a demonstrated intent by the testator to the contrary, since it is the intent of the testator which governs the legal operation of the words used.[2] The court there upheld a construction which included the children of the wife by a prior marriage.
 
 
 12
 The defendant also takes exception in her brief to the trial court's finding (without citation of supporting authority) that "latent ambiguities are created by extrinsic facts and that extrinsic facts can be considered where there is latent ambiguity. The trial court's reasoning is perfectly circular...." Defendant's Brief at 10. Although we agree with the defendant on this point, that is, nevertheless, the law.
 
 
 13
 A latent ambiguity is a defect which does not appear on the face of language used or an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects or things.
 
 
 14
 The principle is firmly established in Ohio that extrinsic evidence is admissible where there is a latent ambiguity in a will, arising out of extrinsic circumstances, to resolve the ambiguity and aid in the interpretation or application of the will. Since latent ambiguity is only disclosed by extrinsic evidence, it may be removed by such evidence.
 
 
 15
 Conkle v. Conkle, 31 Ohio App.2d 44, 51, 285 N.E.2d 883, 887-88 (Ct.App.1972) (citations omitted).
 
 
 16
 Since it is within the trial court's discretion whether to accept extraneous matter on a Rule 12(c) motion, thereby converting the motion into one for summary judgment, Adler v. John Carroll University, 549 F.Supp. 652, 654 (N.D. Ohio 1982), we find that the trial judge did not abuse his discretion in considering the affidavits and related documents submitted by plaintiff in support of her contention that a latent ambiguity was presented in this case. In addition, we find no error in the trial judge's finding that the extrinsic evidence did establish a latent ambiguity regarding the intent of the settlor, giving rise to a genuine issue of material fact which precluded a grant of summary judgment.[3]
 
 III.
 
 17
 We turn now to defendant's allegation that the trial court's decision was clearly erroneous and contrary to the clear weight of the evidence. The facts established that the settlor created the trust in 1975; therefore, it is his intention at that time which is the controlling factor. The trial court specifically noted that there was conflicting evidence presented on this issue. Defendant complains that all the evidence introduced by the plaintiff was with respect to events far removed in time from the actual date of the execution of the trust instrument and therefore was not probative of settlor's intent at that time. However, we would point out that one's intentions are often formed on the basis of cumulative events and experiences and rarely spring forth in precise form within a matter of days or even weeks. It is infrequently the case that a settlor or testator will have made a clear and unequivocal statement of his or her intentions at or near the exact date of the creation of a trust or execution of a will. Having found that the use of the word "children" gave rise to a latent ambiguity, it was incumbent upon the court to consider all relevant evidence bearing on the question of the settlor's state of mind with respect to his brother's two daughters. We review the trial judge's conclusions under the "clearly erroneous" standard prescribed by Fed.R.Civ.P. 52(a). Barry v. United States, 501 F.2d 578 (6th Cir.1974), cert. denied, 420 U.S. 925 (1975). Although some of the evidence was clearly not pertinent to a determination of Edgar Romaine's specific intentions with respect to the disposition of his trust assets,[4] there was sufficient evidence from which the court could find that plaintiff's long-term relationship with the settlor and consistently even-handed treatment with his other nieces demonstrated an intent that she share equally with his brother's natural child.[5]
 
 
 18
 Finally, we note that defendant disputes that portion of the trial judge's opinion which infers that, had the settlor wished to benefit only Althea Welch, he would have used the word "child" instead of the plural form "children." In this context, we recognize that legal draftsmanship, particularly in the area of wills and trusts, tends to be conservative and to attempt to account for any contingency, however remote.[6] Therefore, while we might not have found the use of the plural form "children" as persuasive as the trial court, we nevertheless find its decision supported by the evidence and not clearly erroneous.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable R. Allan Edgar, United States District Court, Eastern District of Tennessee, sitting by designation
 
 
 [1]
 There were affidavits and testimony to the effect that settlor's mother, Cora Romaine, influenced William Romaine not to adopt plaintiff, since it would "cause trouble in the future." Although plaintiff argues that it is possible that she was adopted, she could not produce any records substantiating this claim. The trial court refused to accept parol evidence on the question of her alleged adoption, and made a factual finding in its opinion that no evidence was presented that William Romaine ever adopted the plaintiff
 
 
 [2]
 See generally, Annotation, Testamentary Gift to Children as Including Stepchild, 28 A.L.R.3d 1307 (1969)
 
 
 [3]
 In so holding, we deem it unnecessary to address defendant's argument that the court erred in denying her motion in limine for exclusion of any evidence bearing on settlor's state of mind which was not contemporaneous with the date of the actual creation of the trust, February 26, 1975. In making this argument, defendant confuses the separate and distinct questions of the ascertainment of the settlor's intent and the evidence relevant to this issue. As we discuss, infra, such evidence is circumscribed only by the bounds of relevance not by the date of its occurrence
 
 
 [4]
 A substantial amount of the evidence consisted of testimony and exhibits establishing that plaintiff was accepted and treated by settlor's brother as his child. While not technically relevant to settlor's state of mind, it does serve to demonstrate that her treatment by the family in general was virtually indistinguishable from that accorded the defendant. Coupled with other evidence establishing that the settlor himself did not distinguish between the two, a permissible inference as to settlor's intent emerges. We recognize that other evidence bearing on the plaintiff's treatment by her aunt, as well as testimony by her first cousin to the effect that settlor may have believed that she was adopted, clearly was not relevant; however, it is the function of the trial judge to weigh the evidence. We find that there was sufficient relevant, probative evidence to support his conclusion
 
 
 [5]
 Based on our finding, we decline to rule on defendant's contention that the court erred in failing to grant her Rule 41 motion at the conclusion of plaintiff's case, since the sufficiency of the evidence supporting the trial court's decision is reviewable on appeal regardless of what motions have been made. Bach v. Friden Calculating Mach. Co., 148 F.2d 407 (6th Cir.1945)
 
 
 [6]
 A trust officer with the Fifth Third Bank of Cincinnati, who drafted the trust at issue in this case, testified as follows:
 We like to see instruments in which all contingencies, if at all possible, every contingency is covered so that there would not be a situation arising which is not covered by some language in the instrument. We'd rather have excess language in there than have a situation in which the circumstances are not covered.
 (TR. at 158).