LUTHER S. TWISS & others *vs.* NORMAN B. SIMPSON, administrator, & others.

Middlesex. March 12, 1903. — April 1, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, & HAMMOND, JJ.

*Devise and Legacy*, Construction. *Words*, "Also", "All debts."

A will contained this provision: "I give, devise and bequeath to my wife N. all my shares in railroad and other corporations, also all the money, notes, United States bonds, and all other claims and securities which I may own and be possessed of at the time of my decease, also all my right title and interest in and to my pew in the Congregational Church in said Tewksbury and to the parsonage and shed connected therewith during her life, and then to go to said L., A. and M. and their heirs and assigns in equal shares." After gifts of animals, furniture and wearing apparel to the testator's wife, came the clause: "These bequests are however made expressly upon the condition that she shall pay or cause to be paid to my said sons C. and G. or their legal representatives the sums of one thousand dollars each, as hereinbefore provided." The property mentioned above other than the pew, parsonage and shed was worth about $14,000. The testator's wife survived him. *Held*, that she took an absolute estate in the shares of corporations, "money, notes, United States bonds, and all other claims and securities," subject to the payment of the two legacies named, and not merely a life estate therein.

BILL IN EQUITY, filed November 14, 1902, against the administrator with the will annexed of the estate of Luther Twiss, for an accounting, and the delivery of certain personal property, alleged to have been bequeathed to Nancy M. Twiss during her life, and, on her death, to the three plaintiffs. The other defendants were the administrator with the will annexed of the estate of Nancy M. Twiss, certain savings banks in which portions of the fund in question were deposited, the Stony Brook Railroad, five shares of which belonged to the fund, and the Congregational church of Tewksbury.

The case came on to be heard before *Barker*, J., who reserved

it upon the bill and answers and an agreed statement of facts for determination by the full court, such decree to be entered as justice and equity might require.

*F. N. Wier,* for the plaintiffs.

*B. T. Bartlett,* (*N. C. Bartlett* with him,) for the defendant Simpson.

LATHROP, J. The principal question in this case arises under the will of Luther Twiss, who died on June 12, 1871, leaving a widow, Nancy M. Twiss, and five children by a former wife. His real estate was inventoried at $11,468, and the personal estate at $15,590.89. Three of his children, Luther S., Alvin S., and Mehitable J., were living with him at the time of his death, and they are the plaintiffs in this suit. The other two, Charles H. and George B., were then living in Minnesota.

The will of Luther Twiss first directs that all his just debts and funeral charges should be paid by his executrix, and the rest and residue of his property, real and personal, he disposes of as follows: All his real estate to his sons Luther and Alvin and his daughter Mehitable, "in equal shares, share and share alike, to them their heirs and assigns subject however to the conditions and reservations hereinafter contained."

By the next clause he gives to Alvin certain wagons and harnesses, and the remainder of farming tools and implements to Luther and Alvin, to be equally divided between them. He also by a separate clause gives his watch to his son Alvin.

By the next clause he gives to each of his sons Charles and George, the sum of $1,000, "lawful money, to be paid to them severally by my executrix as soon as conveniently may be after my decease out of that portion of my personal estate hereinafter bequeathed to my said executrix."

Then follows the clause which is the subject of the present controversy. It reads as follows: "I give, devise and bequeath to my wife Nancy M. Twiss all my shares in railroad and other corporations, also all the money, notes, United States bonds, and all other claims and securities which I may own and be possessed of at the time of my decease, also my right title and interest in and to my pew in the Congregational Church in said Tewksbury and to the parsonage and shed connected therewith during her life, and then to go to said Luther S. Twiss, Alvin S.

Twiss and Mehitable J. Twiss and their heirs and assigns in equal shares."

He then gives his wife certain wagons, "two cows, one horse and all the fowls," his household furniture and wearing apparel, "and all the personal property she brought me at the time of our marriage, and all other articles of personal property not herein otherwise disposed of."

Then follows this clause : " These bequests are however made expressly upon the condition that she shall pay or cause to be paid to my said sons Charles H. and George B. Twiss or their legal representatives the sums of one thousand dollars each, as hereinbefore provided."

The only other clause which needs to be mentioned is the following : " I also give and bequeath to my said wife the use and enjoyment of that portion of my dwelling-house now occupied by myself and family, together with all the privileges and appurtenances thereto belonging as fully as the same are now enjoyed by me and also a right in the barn for her horse and cows and for hay and grain for the same, and also to the sheds and other buildings the same as now enjoyed by me, during her life and then to revert to my said sons Luther S. and Alvin S. Twiss and my daughter Mehitable J. Twiss their heirs and assigns forever."

While Nancy M. Twiss was nowhere specifically named in the will as executrix, yet it is apparent from the will that the testator intended her to act in such capacity, and she was in fact appointed by the Probate Court, and administered the estate. As executrix she received property valued at $14,222.89, and paid out of it the two legacies of $1,000 each, $500 to herself for her services as executrix, and all debts, which amounted to less than $500. We assume that " all debts " include the funeral expenses. The rest of the property with the exception of the pew and the horse shed, she transferred to herself, and continued in the possession of the same or of the proceeds thereof until her death on March 30, 1900. At her death she was possessed of personal estate in Massachusetts of the value of $14,084.12, which consisted of five shares of railroad stock, which had formed part of her husband's estate and which she had transferred to herself, and in part of the proceeds of other

property, which had been so transferred, and in part of property which she had obtained from some source other than from her husband's estate.

No question is made of the right of the plaintiffs to the pew, parsonage and shed, which were appraised in the inventory of Luther Twiss at $50.

The only question raised is whether the testator's widow took the other property mentioned in the same clause absolutely or whether she took merely a life estate therein. We are of opinion that she took an absolute estate, and not an estate merely for her life. The words used are more than sufficient to give her an absolute estate in the shares in corporations, claims and securities which her husband owned at the time of his death, and the words relating to the pew, parsonage and shed in which she is given a life estate are separated by the word "also," which is equivalent to the word "item," which denotes a new and distinct bequest. *Evans* v. *Knorr*, 4 Rawle, 66, 69; *Horwitz* v. *Norris*, 60 Penn. St. 261, 282. If this had been formally written out, it would read: "Item. I give and bequeath to my wife Nancy M. Twiss all my shares in railroad and other corporations. Item. I give to my said wife all the money, notes, United States Bonds, and all other claims and securities, which I may own or be possessed of at the time of my decease. Item. I give, devise and bequeath to my said wife all my right, title and interest in and to my pew in the Congregational Church in said Tewksbury, and to the parsonage and shed connected therewith during her life, and then to go to said Luther S. Twiss, Alvin S. Twiss and Mehitable J. Twiss, and their heirs and assigns in equal shares." So written, there would be no question as to the meaning of the testator.

The general scheme of the testator was to give his real estate to the three children who lived with him, with the right to his wife to the pew in the church and the horse shed, and also the use and enjoyment of a portion of his house, during her life; and to give his personal property to his wife, with the exception of his farming tools and implements, which he gave to his two sons who lived with him. Until the St. of 1855, c. 122, §§ 1, 2, a pew, except in Boston, was real estate. That statute changed the law and made a pew personal estate, but preserved the

widow's right of dower, and the law has been the same since. Gen. Sts. c. 30, § 38. Pub. Sts. c. 38, § 42. R. L. c. 36, § 38. The right to use a horse shed is an easement in real estate. This may account for the use of the word "devise," in the clause of the will under consideration.

. What the widow received under the clause giving her the square wagon, etc., does not appear. The agreed facts do not show that she received anything; on the contrary it appears that the $14,222.89 which she received was from money in savings banks, bonds of the United States, five shares of a railroad company, seventeen promissory notes, cash to the amount of $105.50, and the pew and the horse shed. Taking out the pew and the horse shed, the value of the cash assets was $14,172.89. It is also agreed that out of this she paid the two legacies of $1,000 each, the debts, which the plaintiffs in their argument say they are willing to call $500, and $500 for her services as executrix. It is obvious that if the clause in question is considered as giving her only a life estate, she would have to pay out of it at least $2,000, for this is made a charge upon "the personal estate hereinafter bequeathed to" her. It was to be paid "as soon as conveniently may be after my decease." It clearly was not contemplated that she should pay it out of the income of the personal estate, because the capital fund was so small. There is nothing in the will to denote that this sum of $2,000 was first to be deducted before the capital fund was to be formed. The more rational and logical construction of the will is to hold that the widow took the funds and securities absolutely, subject to the payment of the two legacies.

The case of *Sherman* v. *Wooster*, 26 Iowa, 272, is in some respects similar to this. The clause there construed was as follows: "The residue of my estate, real and personal I give, bequeath and dispose of as follows, to wit: To my wife, one half of my real estate also all my personal property during her natural life and at her decease to be equally divided between my two daughters, the one half of my real estate I bequeath to my two daughters and their heirs." It was held that the wife took one half of the real estate in fee, and that the words "during her natural life" were limited to the personal property.

The construction which we have adopted is the grammatical

one, and while the rules of grammar are sometimes disregarded where the intention of the testator clearly requires it, yet the rule itself is to be generally adhered to. In *Barrus* v. *Kirkland,* 8 Gray, 512, it is said by Mr. Justice Bigelow : " The safe practical rule for the construction of wills, is, that the grammatical and ordinary sense of the words is to be adhered to, unless it would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument. This is the only mode of arriving at the intention of the testator, which is to be ascertained, not by conjecturing what the testator intended to do, but by arriving at the just meaning of the words which he has used."

We find in this will nothing which requires us to disregard the rule of grammatical construction.

*Bill dismissed.*