[Cite as *In re Estate of Devine v. Monroe Soc. for the Prevention of Cruelty to Animals*, 2025-Ohio-1523.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| In the Matter of the Estate of Kay E. Devine, Deceased, Fred VanKoughnet, Executor | Court of Appeals No. L-24-1061 |
| | Trial Court No. 20230ADV00103 |
| [Toledo Humane Society and Ohio Attorney General Dave Yost - Appellees] | |
| Appellee | **DECISION AND JUDGMENT** |
| v. | Decided: April 29, 2025 |
| [Monroe Society for the Prevention of Cruelty to Animals - Appellant] | |

* * * * *

Attorney James P. Silk, Jr., for Toledo Humane Society, appellee.

Attorney Deborah Felece Sanders and Attorney Liza Dietrich for the Ohio Attorney General, appellee.

Attorney Robert C. Tucker, Esq., and Attorney Zachary G. Lemon for Monroe Society for the Prevention of Cruelty to Animals, appellant.

* * * * *

**MAYLE, J.**

{¶ 1}  Defendant-appellant, Monroe Society for the Prevention of Cruelty to Animals, appeals the February 13, 2024 judgment of the Lucas County Court of Common Pleas, Probate Division, granting judgment in favor of defendants-appellees, the Toledo Humane Society and the Ohio Attorney General.  For the following reasons, we reverse the trial court judgment.

## I.  Background

{¶ 2}  Kay Devine died on October 27, 2021, in Toledo, Ohio.  Seventeen years before her death, on June 23, 2004, she executed a will while residing in Tennessee. Article THIRD of that will provides as follows:

> All of the rest, residue and remainder of my estate, including all lapsed legacies and any life insurance proceeds made payable to my estate, I bequeath and devise to the chapter of the Society for Prevention to [sic] Cruelty to Animals which is located closest to my place of residence at the time of my death.

{¶ 3} On January 13, 2023, Fred VanKoughnet, executor of Devine's estate, filed a complaint for declaratory judgment in the Lucas County Court of Common Pleas, Probate Division, against several individuals to whom Devine made specific bequests, and against the following entities that he identified as potentially qualifying as the beneficiary of Article THIRD: (1) the Toledo Humane Society; (2) Ohio SPCA; (3) Michigan Humane Society, operating under the trade names of Michigan Humane, Michigan Society for the Prevention of Cruelty to Animals, and SPCA of Michigan; (4) Monroe Society for the Prevention of Cruelty to Animals; (5) American Society for the

2.

Prevention of Cruelty to Animals; (6) Humane Society & SPCA of Hancock County; and (7) unknown and unidentified chapters of the Society for the Prevention of Cruelty to Animals. VanKoughnet asked the court to enter a judgment declaring and determining the true and correct beneficiary of Article THIRD.

{¶ 4} Answers were filed by Ohio SPCA and Humane Society; the Toledo Humane Society; Humane Society & SPCA of Hancock County; and Monroe Society for the Prevention of Cruelty to Animals ("Monroe SPCA"). VanKoughnet sought and was granted default judgment against the non-answering parties, Michigan Humane Society, American Society for the Prevention of Cruelty to Animals, and the unknown and unidentified chapters of the Society for the Prevention of Cruelty to Animals.

{¶ 5} The Ohio Attorney General ("OAG") moved to intervene in accordance with its duty to enforce trusts and gifts for charitable purposes, protect and preserve the interests of charitable beneficiaries, and construe provisions of instruments relating to charitable trusts. The OAG's motion was granted.

{¶ 6} The parties briefed their positions concerning which entity was the true and correct beneficiary of Article THIRD. The OAG's brief supported declaratory judgment in favor of the Toledo Humane Society. In a judgment journalized on February 13, 2024, the trial court found that Article THIRD was ambiguous, and after examining extrinsic evidence, it construed the provision in favor of the Toledo Humane Society.

{¶ 7} Monroe SPCA appealed, assigning the following errors for our review:

3.

1. The trial court erred by finding Article Third of Kay E. Devine's will ambiguous.

2. The trial court erred by using extrinsic evidence to determine Ms. Devine's intention, instead of interpreting the language of the will.

3. The trial court erred in its determination that The Toledo Humane Society is the intended beneficiary of Ms. Devine's will.

{¶ 8} Monroe SPCA, the Toledo Humane Society, and the OAG filed briefs on appeal.

## II. Law and Analysis

{¶ 9} Monroe SPCA argues that the trial court erred when it found Article THIRD ambiguous, used extrinsic evidence to determine Devine's intent, and concluded that the Toledo Humane Society was the intended beneficiary of Devine's will. We review de novo a judgment involving the construction of a will. *Bills v. Babington,* 2019-Ohio-3924, ¶ 8 (6th Dist.). But before addressing Monroe SPCA's assignments of error, we consider the OAG and the Toledo Humane Society's claim that Monroe SPCA lacks standing to pursue this appeal.

## A. Standing

{¶ 10} The OAG and the Toledo Humane Society argue that Monroe SPCA lacks standing, therefore, this court lacks jurisdiction to consider its appeal. They maintain that Devine's will created a charitable trust, and under R.C. Chapter 109, the OAG is the sole representative charged with enforcing charitable trusts for beneficiaries that are indefinite

4.

or undefined. As such, they claim, the OAG is the real party in interest and Monroe SPCA lacks standing. The OAG and the Toledo Humane Society acknowledge that they failed to raise standing in the trial court, but they insist that a party's lack of standing may be challenged at any time during the pendency of a proceeding.

{¶ 11} The OAG and the Toledo Humane Society recognize that when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. But, they claim, only those who are legally affected by the outcome of a lawsuit are proper parties, and to seek enforcement of a charitable trust, a party must have a "special interest" in the case. They insist that possible or potential beneficiaries do not have a "special interest" sufficient to seek the enforcement of a charitable trust. As such, the OAG and the Toledo Humane Society argue that Monroe SPCA has no legal interest in Devine's residual estate, and no standing to challenge the trial court's decision determining the Toledo Humane Society to be the intended beneficiary.

{¶ 12} Monroe SPCA responds that as a defendant at the trial court level, it has standing to appeal the trial court decision denying its status as the intended beneficiary of Devine's will. It argues that it was aggrieved by the final order appealed from and has a present interest in the subject matter of the litigation. Monroe SPCA emphasizes that it did not initiate the lawsuit—the executor of Devine's estate did, and the executor was empowered to do so. It maintains that by litigating alongside Monroe SPCA, the Toledo Humane Society, and the remaining named defendants, the OAG permitted the executor

5.

of Devine's estate to bring the declaratory judgment action that gave rise to this appeal. It insists that the OAG cannot now argue against Monroe SPCA being permitted to appeal the judgment adverse to it.

{¶ 13} The attorney general is charged with the enforcement and protection of charitable trusts and the protection and preservation of the interests of charitable beneficiaries. *Kingdom v. Saxbe,* 161 N.E.2d 461, 462 (P.C. 1958). R.C. 109.25 enumerates certain actions to which the attorney general is a necessary party and provides as follows:

> The attorney general is a necessary party to and shall be served with process or with summons by registered mail in all judicial proceedings, the object of which is to:
>
> (A) Terminate a charitable trust or distribute assets;
>
> (B) Depart from the objects or purposes of a charitable trust as the same are set forth in the instrument creating the trust, including any proceeding for the application of the doctrine of cy pres or deviation;
>
> (C) Construe the provisions of an instrument with respect to a charitable trust;
>
> (D) Determine the validity of a will having provisions for a charitable trust.
>
> A judgment rendered in such proceedings without service of process or summons upon the attorney general is void, unenforceable, and shall be set aside upon the attorney general's motion seeking such relief. The attorney general shall intervene in any judicial proceeding affecting a charitable trust when requested to do so by the court having jurisdiction of the proceeding, and may intervene in any judicial proceeding affecting a charitable trust when he determines that the public interest should be protected in such proceeding.

{¶ 14} However, R.C. 2721.05(C) also authorizes an executor to seek a declaration of rights or legal relations in respect to the administration of an estate or trust, "including questions of construction of wills and other writings." "[W]hen declaratory relief is sought . . . , all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." R.C. 2721.12(A).

{¶ 15} "Standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right." *Albanese v. Batman,* 2016-Ohio-5814, ¶ 24, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 2007-Ohio-5024, ¶ 27, citing *Black's Law Dictionary* 1442 (8th Ed. 2004). "Standing to sue is necessary for invoking the jurisdiction of the common pleas court." *Id.,* citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald,* 2012-Ohio-5017, ¶ 24. Whether a party has standing is a question of law that we review de novo. *State ex rel. Ames v. Portage Cty. Bd. of Revision*, 2021-Ohio-4486, ¶ 8, citing *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.*, 2012-Ohio-1861, ¶ 10.

{¶ 16} Here, Monroe SPCA did not initiate the underlying declaratory-judgment action in the common pleas court. *See Albanese* at ¶ 23 (explaining that appellants had "misconstrue[d] the doctrine of standing by attempting to apply it to a defendant's participation in an action"). The executor of Devine's estate brought the action and named Monroe SPCA a defendant because as he interpreted Article THIRD, Monroe

SPCA may have been the intended beneficiary, and, therefore, had an interest that would be affected by the declaration.

{¶ 17} Importantly, we are dealing here with appellate standing—not standing to sue. "To have appellate standing, a party must be 'aggrieved by the final order appealed from.'" *State ex rel. Merrill v. Ohio Dept. of Nat. Resources*, 2011-Ohio-4612, ¶ 28, quoting *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160 (1942), syllabus. Monroe SPCA was a party to the underlying action, and the trial court entered judgment adverse to it when it determined that the Toledo Humane Society—not Monroe SPCA—would receive the bequest set forth in Article THIRD of Devine's will. *See Albanese* at ¶ 25 (explaining that appellees were entitled to participate in the appellate process because they were parties in the trial court). As such, Monroe SPCA was aggrieved by the trial court judgment, and it has standing to appeal that judgment.

### B. Interpretation of Article THIRD

{¶ 18} In its first assignment of error, Monroe SPCA argues that Article THIRD is not unclear or ambiguous, therefore, extrinsic evidence could not be used to determine Devine's intent. In its second assignment of error, it argues that if the provision is ambiguous, that ambiguity is latent, thus extrinsic evidence could be used only to assist the court to better interpret Devine's intention as expressed in the language used in the will.

{¶ 19} Monroe SPCA maintains that because the language of the will was clear and unambiguous, the trial court's task was simply to locate entities named "Society for

8.

Prevention of Cruelty to Animals" and determine which one was closest to Devine's last residence—in this case, that was Monroe SPCA. It insists that because the language in this devise leaves no doubt as to its meaning, it was improper to look to extrinsic evidence to determine the testator's intent.

{¶ 20} The Toledo Humane Society responds that "chapter" as defined by Merriam Webster means "a local branch of an organization." It argues that the devise here is ambiguous because there are no local chapters of a national Society for the Prevention of Cruelty to Animals. The Toledo Humane Society maintains that because Devine failed to appreciate that there are not local chapters of a national SPCA, the language in her will creates doubt as to its meaning, requiring resort to extrinsic evidence to resolve the ambiguity. As such, it submits, there is no beneficiary specified by the bequest, and extrinsic evidence must be considered.

{¶ 21} The OAG argues that if Article THIRD is not ambiguous, then the bequest would fail altogether because the beneficiary does not exist. It also disputes that Monroe SPCA is the closest SPCA entity because this is its *assumed* name—not the name of the entity under which it is incorporated.

{¶ 22} The trial court agreed with the OAG and the Toledo Humane Society that an ambiguity exists in the will because the language in the will creates doubt as to its meaning. It found generally that Devine's intent was "to leave her residuary estate to an organization dedicated to the prevention of cruelty to animals nearest to her home at the time of her death." It concluded that the use of "ambiguous terminology" permitted it to

9.

examine extrinsic evidence to determine which organization best fit Devine's general intent.

{¶ 23} Under R.C. 2101.24(1)(k), "the probate court has exclusive jurisdiction . . . to construe wills." In construing a will, the court's sole purpose is to ascertain and carry out the testator's intention. *Oliver v. Bank One, Dayton, N.A.,* 60 Ohio St.3d 32, 34 (1991). The testator's intention must be gleaned from the words used in the instrument itself. *Carr v. Stradley*, 52 Ohio St.2d 220 (1977), paragraph one of the syllabus, citing *Townsend's Exrs. v. Townsend*, 25 Ohio St. 477 (1874), paragraph two of the syllabus. "The court may consider extrinsic evidence to determine the testator's intention only when the language used in the will creates doubt as to the meaning of the will." *Oliver* at 34, citing *Sandy v. Mouhot*, 1 Ohio St.3d 143, 144-145 (1982).

{¶ 24} Monroe SPCA maintains in its first assignment of error that the language in Article THIRD was clear and unambiguous and left no doubt as to its meaning. Stated another way, Monroe SPCA contends that Article THIRD is not ambiguous on its face— i.e., it is not *patently* ambiguous.

{¶ 25} "'A patent ambiguity is one which is apparent upon [the] face of an instrument, as where in wills the same tract is disposed of in different clauses to different individuals.'" *In re Thurn's Estate*, 88 N.E.2d 582, 584 (Franklin P.C. 1948), quoting Page on Wills, Section 1623, page 650, Vol. 4. "A devise of 'the sum of two hundred thousand dollars ($25,000)'" would also be an example of a patent ambiguity. 26 No. 4 Ohio Prob. L.J. NL 6.

10.

**{¶ 26}** In another example, *Skalsky v. Bowles*, 2022-Ohio-1568, ¶ 2-3 (5th Dist.), the will at issue was patently ambiguous because it contained two incompatible provisions—one leaving the remainder of the estate to Nancy Bowles, Jeffrey's companion for over 30 years, and another leaving the remainder to "Jeffrey's next of kin by the laws of descent and distribution." The court found that extrinsic evidence was admissible to resolve the patent ambiguity, aid in interpretation of the will, and give effect to the testator's intent. *Id.* at ¶ 23; *See also* 32 Ohio Jur.3d Decedents' Estates, Sec. 471 ("When there is a patent ambiguity in the language of the will, resort may be had to extrinsic evidence to clarify the intent of the testator[.]"). *But see Clark v. Trustees of Hardwick Seminary*, 1888 WL 224 (Cir.Ct. 1888) (finding that ambiguity arising from conflict in provisions of will was a patent ambiguity, and such an ambiguity must be removed "by construction and not by averment").

**{¶ 27}** The Toledo Humane Society argues that the devise here is ambiguous because there are no local chapters of a national Society for the Prevention of Cruelty to Animals. Article THIRD makes no mention of a "local" chapter of a "national" Society for Prevention of Cruelty to Animals. But even if it did, we agree with Monroe SPCA that the language used in the will did not cause it to be *patently* ambiguous. That is, the alleged "ambiguity" is apparent *only when* evidence extrinsic to the will is considered—i.e., evidence demonstrating the lack of "chapters" of "the Society for Prevention to Cruelty to Animals." Because the alleged ambiguity is created by evidence extrinsic to the will—not by the terms of the will itself—any ambiguity here is *latent*.

11.

{¶ 28} A latent ambiguity is a defect that does not appear on the face of the language used in the instrument. *Kaplan v. Fair,* 2004-Ohio-3457, ¶ 20 (6th Dist.). "'It arises when language is clear and intelligible and suggests but a single meaning, but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects or things.'" *Id.*, quoting *Conkle v. Conkle*, 31 Ohio App.2d 44, 51 (5th Dist. 1972). "Courts have applied latent ambiguity analysis to the construction of a will when the 'will contains a misdescription of the object or subject, as where there is no such person or thing in existence[.]'" *Barr v. Jackson*, 2009-Ohio-5135, ¶ 37 (5th Dist.), quoting *Walsh v. Walsh*, 13 Ohio App. 315, 316 (1st Dist. 1920). In *Williams v. Black*, 42 Ohio App. 423, 424 (6th Dist. 1928), this court found that a bequest to "my cousin, Josephine Black, of Fort Wayne" was not ambiguous on its face, but was latently ambiguous because the testator had a cousin by marriage named Josephine Black who resided in Fort Wayne *and* a second cousin named Josephine Black Irving who resided ten miles outside Fort Wayne.

{¶ 29} Monroe SPCA argues that to the extent that there may have been a latent ambiguity here, extrinsic evidence was not admissible to determine Devine's intent, but rather was admissible only to assist the court to better interpret her intention as expressed in the language used in the will. Here, it claims, the only ambiguity is the extrinsic fact that the Society for the Prevention of Cruelty to Animals is not a national organization with "chapters." It insists that the trial court committed a clear error of law by

12.

considering extrinsic evidence, including statutory definitions, the entities' mission statements, and Devine's charitable activity during her lifetime, to determine her intent instead of limiting its focus to the meaning of the word "chapter." It emphasizes that the court also removed the capital letters, which made clear that Devine intended "the Society for Prevention of Cruelty to Animals" as a proper noun to designate a specific organization—not just any organization opposed to animal cruelty. Monroe SPCA claims that the trial court exceeded its role and rewrote the will.

{¶ 30} The Toledo Humane Society and the OAG respond that Monroe SPCA waived this argument by failing to raise it in the trial court. The Toledo Humane Society also argues that the ambiguity here is not merely latent because there is no beneficiary that qualifies under the language of the bequest given that there are no local chapters of a national organization. It maintains that the trial court properly found that based on the language of the bequest, Devine intended to leave her "residuary estate to an organization dedicated to the prevention of cruelty to animals nearest to her home at the time of her death," and as such, it needed to review extrinsic evidence to determine what charity aligned most closely with Devine's intent so that her intent could be effectuated. To that end, the Toledo Humane Society claims that most of the extrinsic evidence the trial court reviewed was focused on whether there was anything significant about the name "SPCA." The court concluded that the mission to prevent cruelty to animals was the same for organizations whether they are called SPCAs, humane societies, or both.

13.

**{¶ 31}** The Toledo Humane Society further contends that even if the ambiguity was latent, the trial court did not improperly rely on extrinsic evidence in finding that the Toledo Humane Society was the proper beneficiary. It points out that "Monroe Society for Prevention of Cruelty to Animals" is an assumed name—the entity was actually formed under the name "Animal Welfare and Protection Coalition for Monroe County"—and is not a local chapter of a national organization.

**{¶ 32}** The OAG contends that the ambiguity in the will is not caused only by use of the word "chapter," but from the entire phrasing of the bequest. It disputes that extrinsic evidence was used to ascertain Devine's intent, and claims it was used to determine the significance of the name "SPCA" and to show that the language of the will was ambiguous because the entity described in it did not exist.

**{¶ 33}** In *Kaplan,* 2004-Ohio-3457 (6th Dist.)*,* we explained that because latent ambiguity is disclosed by extrinsic evidence, it may also be removed by such evidence. *Kaplan* at ¶ 20*,* citing *Conkle,* 31 Ohio App.2d at 51, citing *Shay v. Herman*, 85 Ohio App. 441, 444 (2d Dist. 1948). There we considered extrinsic evidence establishing the existence of a latent ambiguity where the attorney erroneously named "Joyce" Smith as a beneficiary, instead of "George" Smith. "Where there is a latent ambiguity appearing in a will, extrinsic evidence is admissible, not for the purpose of showing the testator's intention, but to assist the court to better *interpret* that intention from the language used in the will." (Emphasis sic.) *Radzisewski v. Szymanczak,* 2012-Ohio-2639, ¶ 19 (8th Dist.), citing *Barr,* 2009-Ohio-5135, at ¶ 36 (5th Dist.), citing *Shay* at 444.

14.

{¶ 34} Here, we find that a latent ambiguity exists. This is because extrinsic evidence demonstrated that there is no *one* Society for the Prevention of Cruelty to Animals that maintains "chapters." As such, it was appropriate for the probate court to consider extrinsic evidence not for the purpose of showing Devine's intention, "but to assist the court to better *interpret* that intention from the language used in the will." *Id.* Instead of limiting its use of extrinsic evidence to better interpret Devine's intention *from the language used* in Article THIRD—i.e., a bequest to "the chapter of the Society for Prevention [of] Cruelty to Animals which is located closest to my place of residence at the time of my death"—the trial court used extrinsic evidence to discern a *general intention* to benefit *an organization* whose mission is to prevent cruelty to animals. Accordingly, we agree with Monroe SPCA that the trial court erred in its use of the extrinsic evidence here.

{¶ 35} To the extent that the trial court found that "an ambiguity does exist" in Devine's will because "the language creates doubt as to its meaning,"—i.e., that it was patently ambiguous—we agree with Monroe SPCA that the trial court erred and we find its first assignment of error well-taken. Moreover, because we agree that extrinsic evidence demonstrated a *latent* ambiguity, we agree with Monroe SPCA that the trial court erred when it considered extrinsic evidence to discern a general intent to benefit an organization dedicated to the prevention of cruelty to animals nearest to her home instead of limiting its consideration of extrinsic evidence to better interpret her intention from the

15.

language used in the will. We find Monroe SPCA's second assignment of error well-taken.

### C. The Trial Court's Determination

{¶ 36} In its third assignment of error, Monroe SPCA argues that even if the trial court correctly determined that the will was ambiguous, it improperly treated the ambiguity as an excuse to completely disregard its words. It emphasizes that even if an ambiguity exists, the trial court was still obligated to determine Devine's intent from the words she used. Instead, it claims, the trial court ignored the use of capital letters in "Society for Prevention of Cruelty to Animals" and employed reasoning that does not support its conclusion that the Toledo Humane Society was the intended beneficiary of the will. Monroe SPCA points out that two facts highlighted by the court—(1) that Devine's will specified her intention to be buried at Toledo Memorial Park, and (2) Devine supported the Toledo Humane Society while she was alive—just as easily cut against its conclusion because they demonstrate that Devine knew how to identify a specific location in Toledo and knew the name and mission of the Toledo Humane Society, yet never amended her will to specifically benefit this entity. It maintains that the trial court transformed a specific intention to benefit the "Society for Prevention of Cruelty to Animals" into a vague one to generally support an entity with the same mission.

{¶ 37} The Toledo Humane Society responds that the trial court properly relied on extrinsic evidence to determine that the mission, not the name of an organization, was

16.

relevant in determining which entity should receive the bequest. It maintains that Devine clearly wanted her bequest to benefit a local organization that prevented cruelty to animals, and she reaffirmed this intent later in life by donating to the Toledo Humane Society—an organization with a mission identical to that of an SPCA. It emphasizes that the Toledo Humane Society is the organization closest to Devine's place of residence at the time of her death, and it maintains that the fact that the letters in the bequest are capitalized is of no significance.

{¶ 38} The Toledo Humane Society further argues that because Devine's bequest is to a charity, the doctrine of cy pres applies. Under this doctrine, when it is impossible to fulfill a charitable object, the court may substitute another charitable object which it believes most closely matches the original purpose. It maintains that the trial court correctly found that Devine's objective was to "leave her residuary estate to an organization dedicated to the prevention of cruelty to animals nearest to her home at the time of her death," and the will was ambiguous because a chapter of the Society for Prevention to Cruelty to Animals did not exist. The Toledo Humane Society insists that because of this ambiguity, Devine's bequest was impossible to carry out, the trial court had to identify a substitute beneficiary, and it appropriately found that the Toledo Humane Society should be the beneficiary.

{¶ 39} The OAG maintains that use of the phrase "SPCA" is based on preference and is not an external requirement. It claims that the trial court considered many factors before concluding that the Toledo Humane Society most closely fit the purposes of the

17.

trust and it correctly concluded that Devine would want to benefit the organization located closest to her residence.  Like the Toledo Humane Society, the OAG also insists that the court's decision is consistent with the doctrine of cy pres, preventing the bequest from failing despite the ambiguity in the language used in the will.

**{¶ 40}** As we recognized in the preceding section, a court may consider extrinsic evidence to resolve a latent ambiguity in a will.  *Kaplan*, 2004-Ohio-3457, ¶ 20 (6th Dist.).  But a court may not rewrite a will, and it "'has no power to make a new and different will for a testator in contravention of the language employed in the will.'" *Bogar v. Baker*, 2017-Ohio-7766, ¶ 18 (7th Dist.)*,* quoting *Kurtz v. Kurtz*, 1991 WL 84027, *3 (12th Dist. May 20, 1991), citing *Cleveland Trust Co. v. Frost*, 166 Ohio St. 329, 333 (1957).  "The language intentionally used in a will is presumed to have been placed there for a purpose and cannot arbitrarily be ignored."  *First Troy Nat. Bank & Tr. Co. v. Holder*, 109 Ohio App. 445, 455 (2d Dist. 1959).

**{¶ 41}** Here, the trial court agreed with the OAG and the Toledo Humane Society that an ambiguity exists in the will because the language in the will creates doubt as to its meaning.  It accepted their position that there are no "local SPCA chapters" and no "overriding national organization that maintains local chapters throughout the country," and it used extrinsic evidence to justify its conclusion that the Toledo Humane Society most closely fit Devine's intent because state entities can call themselves "SPCA" or "Humane Society" based on their preference; "Society for the Prevention of Cruelty to Animals" is not defined in the Ohio Revised Code or any reported legal decision; the

18.

Toledo Humane Society is dedicated to the prevention of cruelty to animals, investigates 2,000 animal cruelty reports every year, and enforces cruelty laws; Devine's will anticipated that she would return to Lucas County; she supported the Toledo Humane Society during her lifetime; and the Toledo Humane Society is located closest to where she resided when she died.

{¶ 42} But the court ignored the language of Article THIRD of Devine's will and entirely disregarded the import of the capitalization of "the Society for Prevention [of] Cruelty to Animals."  It is generally true that the "[r]ules for construing wills are less rigid than those for construing other instruments," particularly if the will was drafted by a layman and not a lawyer.  *Moon v. Stewart*, 87 Ohio St. 349, 358 (1913).  Nevertheless, "the intent of the testator must be ascertained primarily from within the four corners of the will."  *Fifth Third Union Tr. Co. v. Athenaeum of Ohio*, 84 Ohio Law Abs. 208 (P.C. 1959).  And rules of grammar are elemental to reading and understanding any writing.  *Oliveri v. OsteoStrong*, 2021-Ohio-1694, ¶ 21 (11th Dist.).  Under common rules of grammar—and as a principle of legal writing—only proper nouns should be capitalized.  *See The Supreme Court of Ohio Writing Manual* (3d Ed. 2024) at § 7.1.  Usually, one may interpret a capitalized noun as referring to a specific person, place, or thing.  *See, e.g., B & B Heating & Air Conditioning Co. v. Horvath,* 1992 WL 339078, *3 (11th Dist. Nov. 20, 1992).  Notwithstanding this principle, the court placed no significance in the capitalization of "Society for Prevention [of] Cruelty to Animals."

**{¶ 43}** The OAG and the Toledo Humane Society maintain that "chapters" of "the Society for Prevention [of] Cruelty to Animals," do not exist, thus there is no beneficiary specified by the bequest. In fact, as demonstrated in the record, there are *many* organizations called "Society for Prevention [of] Cruelty to Animals." Toledo Humane Society also repeatedly states that there is no "local" chapter of a "national" SPCA. But Article THIRD never uses these words. The bequest makes no mention of a "local" chapter. And while "the" "Society for Prevention of Cruelty to Animals" suggests that Devine may have believed that there exists a single specific entity by that name, the fact that multiple organizations exist with this name means simply that the trial court must determine *which* "Society for Prevention of Cruelty to Animals" Devine intended to benefit—i.e., which "Society for Prevention of Cruelty to Animals" was "located closest to [Devine's] place of residence at the time of [her] death."

**{¶ 44}** We agree with Monroe SPCA that the ambiguity here—a latent ambiguity—lies in the use of the word "chapter." As the Toledo Humane Society points out, "chapter" is defined to mean "a branch, usually restricted to a given locality, of a society, organization, fraternity, etc." www.dictionary.com/browse/chapter (last accessed January 23, 2025). When the court reviewed the extrinsic evidence here, its focus should have been on interpreting the word "chapter" and reconciling Devine's use of this word with the fact that there is not just *one*, but *many* organizations that are registered under the name "Society for Prevention of Cruelty to Animals." Its focus should not have been to construe Devine's *general* intention in making her bequest.

20.

**{¶ 45}** The concurrence/dissent concludes that "Society for the Prevention [of] Cruelty to Animals" also presents a latent ambiguity because there is no organization with that precise name. It advocates for a broader consideration of Devine's intent upon remand. It cites two cases in support of its position: *Beaston v. Slingwine*, 2004-Ohio-924 (3d Dist.) and *McDonald & Co. Securities, Inc. v. Alzheimer's Disease and Related Disorders Assn., Inc.,* 140 Ohio App.3d 358 (1st Dist. 2000).

**{¶ 46}** In *Beaston*, the decedent left the residuary of her estate to "Extended Family Adult Care." There was no entity with this precise name, but the decedent had lived at the "Extended Family Adult Care Center." The Third District determined that this discrepancy created a latent ambiguity that presented a question of fact whether "Extended Family Adult Care" was merely a misnomer for "Extended Family Adult Care Center." *Id.* at ¶ 14.

**{¶ 47}** In *McDonald*, the decedent designated "Alzheimer's Research Center" as the beneficiary of his individual retirement account. The appellate court determined that "the phrase 'Alzheimer's Research Center' is ambiguous because it does not, standing alone, identify any particular entity. No organization solely uses the name 'Alzheimer's Research Center.'" *Id.* at 363.

**{¶ 48}** Unlike the bequests at issue in *Beaston* and *McDonald*, the proper name at issue here—"the Society for the Prevention [of] Cruelty to Animals"—does not "stand alone" as the intended beneficiary of Devine's will. Instead, the designated beneficiary is "*the chapter of* the Society for the Prevention [of] Cruelty to Animals *which is located*

21.

*closest to my place of residence at the time of my death.*"  The will therefore recognizes that multiple entities use the name "Society for the Prevention of Cruelty to Animals," and instructs that the "chapter" that is "located closest to my residence at the time of my death" should receive the bequest.  As we explained earlier in this decision, the word "chapter" is what renders the provision latently ambiguous.

{¶ 49} Accordingly, we find Monroe SPCA's third assignment of error well-taken. We remand this matter to the trial court to interpret Devine's intention from the language used in the will.  *See Beaston* (remanding matter to trial court for determination of whether "Extended Family Adult Care" was a misnomer for "Extended Family Adult Care Center").

### III.    Conclusion

{¶ 50} Article THIRD of Devine's will contained a latent ambiguity that required the court's interpretation.  In simply declaring that the will was ambiguous, generally, and broadly considering extrinsic evidence to determine Devine's intention, the trial court ignored the language of the bequest, effectively rewriting the will.  We find Monroe SPCA's assignments of error well-taken.

{¶ 51} We reverse the February 13, 2024 judgment of the Lucas County Court of Common Pleas, Probate Division, and remand this matter to the probate court for it to interpret the language used in the bequest to determine the intended beneficiary of Article THIRD.  The OAG and the Toledo Humane Society are ordered to share the costs of this appeal under App.R. 24.

22.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

JUDGE

Charles E. Sulek, P.J.
CONCURS,

JUDGE

Gene A. Zmuda, J.
CONCURS IN PART, DISSENTS
IN PART AND WRITES
SEPERATELY.

JUDGE

**ZMUDA, J.**

**{¶ 52}** I concur with the majority in its conclusion that a latent ambiguity rather than a patent ambiguity exists in Kay Devine's will, and I concur that the term "chapter" is one part of the latent ambiguity. However, I respectfully dissent to the extent that the majority concludes that the phrase "the Society for the Prevention to Cruelty to Animals" does not also present a latent ambiguity. In addition, I concur with the majority's statement of the use of extrinsic evidence to determine the testator's intent and resolve the latent ambiguity, but I would clarify that the extrinsic evidence must be relevant to

23.

determining the testator's intent at the time the will was made. Finally, I concur that this case must be remanded to the trial court for further proceedings, but I respectfully dissent from the majority's determination that the trial court must limit its consideration of potential beneficiaries to organizations containing the phrase "Society for the Prevention of Cruelty to Animals" in their names. Instead, I would remand the case to the trial court with instructions to consider extrinsic evidence of Devine's intent at the time she made the will in using the words "chapter" and "Society for the Prevention to Cruelty to Animals."

I.      **"Society for the Prevention to Cruelty to Animals" also contains a latent ambiguity.**

{¶ 53} In addition to the word "chapter," I believe the will's use of the phrase "Society for the Prevention to Cruelty to Animals" also presents a latent ambiguity. No organization with that exact name has been identified. Instead, several unrelated organizations contain the phrase "Society for the Prevention of Cruelty to Animals" as part of their names, including Monroe SPCA. In addition, several organizations without that phrase in their names are societies whose purpose is the prevention of cruelty to animals, including the Toledo Humane Society.

{¶ 54} A latent ambiguity exists when a testator uses only a part of an organization's name. For example, in *Beaston v. Slingwine*, 2004-Ohio-924 (3rd Dist.), the testator left the residuary of her estate to "Extended Family Adult Care." *Id*. at ¶ 2. At the time of her death, the testator lived in a facility that was called "Extended Family

Adult Care Center." *Id*. The appellate court determined that there existed a question of fact regarding whether the testator, "in writing the words 'Extended Family Adult Care' actually intended to make her bequest to 'Extended Family Adult Care Center….'" *Id*. at ¶ 9. In addition, the court held that because "the name in [the testator's] will does not accurately reflect the registered trade name of the business, … it will be incumbent upon [the business] to prove that 'Extended Family Adult Care' was merely a misnomer for 'Extended Family Adult Care Center.'" *Id*. at ¶ 11.

{¶ 55} Guidance is also found in a case with very similar facts as this one, *McDonald & Co. Sec., Gradison Div. v. Alzheimer's Disease & Related Disorders Assn.*, *Inc.*, 140 Ohio App.3d 358 (1st Dist. 2000). In that case, the First District found a latent ambiguity in the use of "Azheimer's Research Center" in the grantor's individual retirement account (IRA) beneficiary designation form because no such organization could be identified. *Id*. at 363. Of the three named defendants in the declaratory-judgment action, only one used "Alzheimer's Research Center" in its name, the University of Cincinnati College of Medicine Alzheimer's Research Center (UC). *Id*. at 361. The other two organizations contained the word Alzheimer's in their names, but not research or center, and all three organizations had missions to further Alzheimer's research. *Id*. at 361-62. On appeal, UC argued that the term "Alzheimer's Research Center" was not ambiguous and as the only defendant with those words in its name, it should be the only recipient of the funds. *Id*. at 363. The First District found that

25.

argument unpersuasive, agreeing with the probate court that the term was ambiguous, as follows:

> [T]he phrase 'Alzheimer's Research Center' is ambiguous because it does not, standing alone, identify any particular entity. No organization solely uses the name 'Alzheimer's Research Center.' Although UC uses those words as part of its name, it has never identified itself solely using that phrase. It refers to itself as being part of the University of Cincinnati or the University of Cincinnati College of Medicine. Further, other organizations also use the phrase as part of their names. As the trial court stated, 'that particular designation could reasonably apply to any one of a number of organizations[.]'

*Id*.

{¶ 56} Here, none of the defendants are named the "Society for the Prevention to Cruelty to Animals," and no one has identified an organization with that exact name. Accordingly, the phrase "Society for the Prevention to Cruelty to Animals" also contains a latent ambiguity that must be resolved.

**II.    The majority's analysis lacks sufficient focus on the testator's intent.**

{¶ 57} I also dissent to the extent that the majority determined that the capital letters in "Society for the Prevention of Cruelty to Animals" conclusively established that Devine intended those words to be the name of an organization.  While I agree with the majority that extrinsic evidence is admissible to better interpret Devine's intentions in using the language in her will rather than to determine her general intent, I believe the majority's analysis fails to recognize that extrinsic evidence must also be probative of the testator's intent at the time the will was made.  In addition, the majority omits altogether one of the most important

26.

tenets in the construction of a will—a will must be liberally construed in favor of the testator's intent.

{¶ 58} First, in addition to limiting its use of extrinsic evidence to interpret the will's language, a probate court may only consider extrinsic evidence to the extent that it is probative of the testator's intent at the time the will was executed. *See Radzisewski v. Szymanczak*, 2012-Ohio-2639, ¶ 19 (8th Dist.), citing *Barr v. Jackson*, 2009-Ohio-5135, ¶ 36 (5th Dist.), citing *Shay v. Herman*, 85 Ohio App. 441, 444 (2d Dist. 1948); *Bogar v. Baker*, 2019-Ohio-1762, ¶ 25 (7th Dist.). Accordingly, there is both a context-based limit—the probate court may only consider the testator's intent in the context of the will's language— and a time-based limit—the probate court must only consider the testator's intent at the time the will was executed to a probate court's consideration of extrinsic evidence.

{¶ 59} For example, in *Bogar v. Baker*, 2019-Ohio-1762 (7th Dist.), a latent ambiguity existed in the testator's bequest of the "contents" of real property, which the testator had used as a farm. *Id*. at ¶ 5. The will beneficiaries disagreed whether the term "contents" included farm equipment and vehicles present on the property at the time of the testator's death. *Id*. at ¶ 3. The Seventh District concluded that evidence of the testator's use of that equipment during his lifetime was irrelevant to resolve the ambiguity, but the testimony of the attorney who prepared the will regarding the testator's intentions could be considered. *Id*. at ¶ 25. Extending that principle to the case before us, I emphasize that the probate court may only consider extrinsic evidence to the extent such evidence is probative

27.

of Devine's intent in using the phrase "chapter of the Society for Prevention to Cruelty to Animals" at the time she made the will.

{¶ 60} Next, the majority's analysis relies on a technical reading of the language in Devine's will, failing to construe the will liberally. A will, unlike many other written instruments, must be construed liberally in favor of effecting the testator's intent. *See Thompson v. Thompson*, 4 Ohio St. 333, 351 (1854) ("Of all the instruments that need the benefit of a liberal construction—a construction that prefers substance to mere form—wills need it the most."). In addition, charitable bequests in wills and other instruments are favored and must be "liberally construed to accomplish the testator or grantor's purpose." *McDonald*, 140 Ohio App.3d at 365, citing *Wills v. Union Savings & Trust Co.*, 69 Ohio St.2d 382, 386 (1982); *Becker v. Fisher*, 112 Ohio St. 284, 294-95 (1925); *Hess v. Sommers*, 4 Ohio App.3d 281, 285 (1982); s*ee also Zanesville Canal & Mfg. Co. v. City of Zanesville*, 20 Ohio 483, 486 (1851) ("In the interpretation of charitable bequests, greater liberality of construction obtains than in cases of ordinary legacies."); *First Merit Bank, N.A. v. Akron Gen. Med. Ctr.*, 2018-Ohio-2689, ¶ 23 (5th Dist.), ("The law favors charitable bequests, and they are liberally construed to accomplish the testator or grantor's purpose.").

{¶ 61} Because wills—and charitable bequests in particular—must be liberally construed in favor of the testator's intent, Ohio courts have repeatedly explained that a strict grammatical reading of their language may not supplant the testator's intent. *See, e.g., Worman's Lessee v. Teagarden*, 2 Ohio St. 380, 382 (1853) ("[A] fair construction [of a will] only is given when the intention of the testator is ascertained from what he has said—read

28.

without being controlled by grammatical accuracy."); *S.S. Kresge Co. v. B.D.K. Co.*, 52 Ohio App. 101, 112 (7th Dist. 1935), quoting *Brasher v. Marsh*, 15 Ohio St. 103, 108-09 (1864) ("'The rule for construing the language of a will is less rigid than it is in regard to any other instrument. It is not, necessarily, to be viewed technically, and, with strict grammatical accuracy, but sensibly and liberally, in order to give effect to intention."); *Krieger v. Stauffer*, 67 N.E.2d 449, 453 (Fulton C.P. May 14, 1946), citing *Twiss v. Simpson*, 66 N.E. 795, 796 (Mass. 1903) ("'In the construction of a will the ordinary rules of grammar are to be adhered to, unless a different construction is necessary to effectuate the intention of the testator.'"").

{¶ 62} Therefore, in resolving a latent ambiguity in a will or a charitable bequest, instead of relying on a strict mechanical approach to interpreting ambiguous language, the probate court must consider extrinsic evidence of the testator's intent at the time the will was made in conjunction with that language. For example, in the *McDonald* case discussed above in which a grantor designated "Alzheimer's Research Center" as a beneficiary for his IRA, UC argued that the probate court "failed to give effect to the language [the grantor] used" when the probate court ordered that all three defendants split the funds between them. *McDonald* at 364. UC maintained that grantor's use of "Alzheimer's Research Center" indicated the grantor's intent to benefit a specific organization that operated an Alzheimer's research center rather than a general intent to give to organizations involved with Alzheimer's. *Id.* In finding this argument unpersuasive, the appellate court pointed to the

29.

testimony of the financial advisor who assisted the grantor in completing the form, which

was as follows:

> [The grantor] wanted some of his IRA proceeds to go to
> 'Alzheimer's[,]' but he did not remember [the grantor] using
> the word 'research,' and he stated that neither he nor [the
> grantor] knew that 'there were subsections of Alzheimer's.'
> He also stated that he did not know who picked the words
> "Alzheimer's Research Center" and that he had no indication
> of what organization [the grantor] intended. [The financial
> advisor] had arranged for a secretary to type the list of
> beneficiaries and [the grantor] had signed it in his presence,
> but the form contained other instances of inexact language.

*Id*. at 362.

{¶ 63} The appellate court explained that the probate court, as the finder of fact,

could find this testimony credible and conclude that the grantor had not intended to

benefit a specific organization but instead "wanted money to go to 'Alzheimer's.'" *Id*. at

364. The appellate court also pointed to the grantor's donations to the other two

defendants and the absence of any relationship between the grantor and UC to conclude

that "the evidence did not support the conclusion that [the grantor] would specifically

have wanted the funds to be given to UC." *Id.*

{¶ 64} Here, the majority has determined that Devine's use of capital letters

conclusively establishes that Devine intended the phrase "Society for the Prevention to

Cruelty to Animals" to be a proper noun, and therefore Devine intended to benefit a

specific organization with that phrase as its name. However, this conclusion skips a step.

Because no organization exists that uses "Society for the Prevention to Cruelty to

30.

Animals" as its exact name, Devine's use of capital letters is one reason why the phrase results in a latent ambiguity. Because the use of capital letters contributes to the phrase's ambiguity, extrinsic evidence of Devine's intent in using that phrase—including her use of capital letters—at the time she executed her will is necessary to resolve the ambiguity. Once a court has extrinsic evidence of Devine's intent, the court must liberally construe the phrase in favor of Devine's intent, not strictly construe the phrase in accordance with grammatical rules.

{¶ 65} The majority also points to the use of the word "chapter" in front of the phrase "Society for the Prevention to Cruelty to Animals" to conclude that the phrase is not ambiguous, reasoning that the use of chapter indicates that Devine contemplated the existence of multiple organizations using the phrase "Society for the Prevention to Cruelty to Animals" as part of their names and intended to benefit whichever of those multiple organizations was located nearest to her residence at the time of her death. Again, however, this conclusion skips a step. The only way that the use of "chapter" could make the phrase "Society for the Prevention to Cruelty to Animals" unambiguous would be if Devine intended to define "chapter" as an independent or standalone organization whose name contains in part the same phrase as multiple other unrelated organizations. However, "chapter" is defined by Merriam-Webster as "a local branch of an organization," and Merriam-Webster defines "branch" as "a part of a complex body, such as … a division of an organization [or] a separate but dependent part of a central organization." Accordingly, chapter's dictionary definition is a local division or

dependent part of a single larger organization, not an independent or standalone organization whose name contains in part the same phrase as multiple other unrelated organizations. The majority's conclusion thus requires, *without extrinsic evidence of Devine's intent to do so*, ascribing a meaning to "chapter" that directly conflicts with its ordinary dictionary meaning. As discussed below, Devine may have intended to use the word "chapter" in this way, but without additional extrinsic evidence of her intent, I believe that this court should not make such a conclusion.

### III. The trial court did not have sufficient extrinsic evidence of the testator's intent.

{¶ 66} Although there appears to be no specific requirement that a court must hold a hearing to receive extrinsic evidence of a testator's intent at the time the will was made, many probate courts do so. *See, e.g., Radzisewski*, 2012-Ohio-2639 at ¶ 8; *Barr v. Jackson*, 2009-Ohio-5135, ¶ 28 (5th Dist.); *Cline v. Lewton*, 1994 WL 149259, *1 (9th Dist. Apr. 27, 1994); *Conkle v. Conkle*, 31 Ohio App.2d 44, 47 (5th Dist. 1972). Even when probate courts have not held hearings, evidence was submitted in the form of affidavits of attorneys or others who knew the testator's intent in making a particular will provision. *See, e.g., Michelsen-Caldwell v. Croy*, 2008-Ohio-4281, ¶ 43 (6th Dist.); *Kaplan v. Fair*, 2004-Ohio-3457, ¶ 21 (6th Dist.). Further, if an appellate court determines that a probate court's resolution of an ambiguity was not focused on the testator's intent at the time the will was made and the trial court lacked appropriate extrinsic evidence for such a focus, then remand to the probate court for a new evidentiary hearing is appropriate. *See Bogar v. Baker*, 2017-

32.

Ohio-7766, ¶ 26 (7th Dist.) (remanding case to probate court for a new evidentiary hearing because the court lacked evidence regarding the testator's intent to resolve a latent ambiguity in a will).

{¶ 67} Here, a review of the record establishes that there was no extrinsic evidence before the probate court that specifically concerned Devine's intent in using the words "chapter" and "Society for the Prevention to Cruelty to Animals" at the time she made the will. Instead, the only evidence regarding Devine herself was that she lived in Tennessee when she executed her will, she wanted to be buried in a cemetery in Toledo, and sometime after the will's execution, she moved to Toledo, where she donated at least once to the Toledo Humane Society. There was no evidence presented that Devine had any connection with any organization containing the phrase "Society for the Prevention to Cruelty to Animals" in its name. The extrinsic evidence regarding the defendants includes that Monroe SPCA and Toledo Humane Society both have missions involving the prevention of cruelty to animals, neither is a branch of a national or larger organization, and the phrases "Society for the Prevention of Cruelty to Animals" and "Humane Society" can be used interchangeably in Ohio by animal welfare organizations. Finally, Monroe SPCA's legal name is "Animal Welfare and Protection Coalition for Monroe County," and it uses Monroe Society for the Prevention of Cruelty to Animals as an assumed name.

{¶ 68} Accordingly, the record contains no extrinsic evidence from which to conclusively determine that, at the time she made her will, Devine contemplated that there were multiple unrelated organizations with names containing the words "Society for the

33.

Prevention to Cruelty to Animals" and intended to benefit the one nearest to her residence. Though the extrinsic evidence does not foreclose that possibility, several other possibilities of Devine's understanding of the words "chapter" and "Society for the Prevention to Cruelty to Animals" exist based on the limited extrinsic evidence before the probate court. Devine could have believed that there was a single larger organization named "Society for the Prevention to Cruelty to Animals" with chapters as that word is defined by the dictionary. Alternatively, she could have believed that "Society for the Prevention to Cruelty to Animals" indicated a specific type of organization, thought "chapter" meant a local organization of that type, and attributed no significance to the organization's actual name.

{¶ 69} Based on the limited evidence before the probate court, and under a liberal construction of the language in her charitable bequest, Devine could have intended to benefit either of the following when she used the phrase Society for the Prevention to Cruelty to Animals: (1) an entity with a name containing the words Society for the Prevention to Cruelty to Animals or some variation of this; or (2) an organization or club whose purpose[1] is the prevention of cruelty to animals. And if the probate court does determine—through its appropriate consideration of extrinsic evidence—that Devine intended to benefit specifically an organization with a name containing the words Society for the Prevention to Cruelty to Animals, the court must also consider whether the significance Devine placed on the existence of those particular words in the entity's name demonstrates an intent to exclude

---

[1] Society means "an organization or club formed for a particular purpose or activity" according to Oxford Languages.

34.

any organization that does not contain the words in its legal name. Finally, Devine's use of the word "chapter" compounds the ambiguity because no organization with chapters—as that word is defined in the dictionary— has been identified that either has the phrase "Society for the Prevention of Cruelty to Animals" in its name or is dedicated to the prevention of cruelty to animals.

{¶ 70} Accordingly, the latent ambiguities in Devine's will were not resolved by the extrinsic evidence before the probate court. An evidentiary hearing to elicit additional extrinsic evidence would be the most efficient and appropriate method to ascertain Devine's intent, at the time she made the will, and resolve those ambiguities. As such, consistent with *Bogar*, 2017-Ohio-7766, I would reverse and remand the case to the probate court with instructions to hold an evidentiary hearing.

{¶ 71} Because Devine's will contains latent ambiguities and the probate court's decision did not resolve the latent ambiguities, I concur with the majority in reversing the trial court's judgment and remanding the case for further proceedings. However, I specifically dissent from the majority's limitations on the scope of the further proceedings. I would remand this matter for the probate court to conduct a hearing to consider additional extrinsic evidence regarding Devine's intent, at the time she made the will, in using the words "the chapter of the Society for the Prevention to Cruelty to Animals."

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

36.